*NATHAN LOUDERMAN, EXR. v. HENRY JUDY.

1. SUIT UPON A SPECIALTY.

In a suit upon a specialty by the payee, an answer of the maker setting up a want of consideration constitutes a good defense.

2. AN INSTRUMENT THOUGH NOT REQUIRED TO BE SEALED, MAY BE HELD AS A SPECIALTY, WHEN.

Although an instrument (executed prior to March 29, 1883), was not required by law to be sealed, if the maker affixed his signature in front of a scrawl seal, at the end thereof, such instrument is a specialty.

3. ERRONEOUSLY OVERRULING A DEMURRER TO A PETITION, EFFECT UPON A JUDGMENT SUBSEQUENTLY RENDERED.

Where a demurrer to a petition omitting a material fact, is erroneously overruled, but the defendant, by answer, supplies the fact omitted and the cause is disposed of on issues joined upon the answer, the judgment will not be reversed for error in overruling the demurrer.

ERROR to the Court of Common Pleas of Fayette county.

STEWART, J.

The original action in this case was brought by the defendant in error against the plaintiff in error, upon a cause of action, which is stated in his petition substantially as follows: That on October 5, 1882, the plaintiff was the owner of a note for $269.52, dated January 18, 1873, due in six months with eight per cent. interest, and signed by Jesse Louderman; at which date he "turned the same over and surrendered" it to Henry Louderman who, in consideration therefor, executed and delivered to him the following:

"NEW HOLLAND, O., October 5, 1882.

"In consideration of the following described note of my son Jesse Louderman being turned over to me by Henry Judy, the owner and holder thereof, this day, I agree to pay to the said Henry Judy from my personal estate at my decease, the sum of $269.52, to be paid by my executor or administrator, as the case may be, and I hereby make this charge and advancement to the heirs of my son, the said Jesse Louderman."

The following is a copy of said note:

"$269.52.—Six months after date I promise to pay to Henry Judy or order, the just and full sum of two hundred and sixty-nine dollars and fifty-two cents, for value received this 18th day of January, A. D., 1873, bearing eight per cent. interest from date.

"JESSE LOUDERMAN.

---

* The judgment in this case was reversed by the Supreme Court. See opinion, 48 O. S., 562.

It was followed by the circuit court in Smith v. Frame, 2 Ohio Cir Dec.—(s. c. 3 C. C., 589.)

"In witness whereof I have hereunto set my hand and seal this 5th day of October, A. D., 1882.                    HENRY LOUDERMAN.        [SEAL.]

"Signed and sealed in our presence this 5th day of October, 1882.
                              "*Witness:*   JOHN LOUDERMAN,
                                        "NATHAN LOUDERMAN."

The petition then alleges that Henry Louderman is dead, and that defendant has been duly appointed and qualified as his executor; that the claim was duly presented to him and he rejected it less than six months prior to the bringing of the suit; that there is due plaintiff thereon $269.52, with interest, and "asks judgment that his said claim be allowed and paid out of the estate of the said Henry Louderman deceased."

The prayer of this petition is rather peculiar, and a portion of it seems to have been drawn upon the supposition that this was a suit to compel the allowance of the claim; but by an examination of secs. 6097 and 6107, Rev. Stat., it will be seen that where a claim is rejected by an administrator or executor, suit must be brought within six months to recover a *judgment upon the claim*, which is to be satisfied out of the assets of the deceased in his hands. Rejecting, however, so much of this prayer as is clearly not warranted by the statute, there remains the prayer for judgment upon the claim.

To the petition a general demurrer was filed, which was overruled, and this is the first error assigned.

By the contract set forth in the petition the sum agreed to be paid thereon is payable out of the personal estate of Henry Louderman at his decease; being payable out of a particular fund, it is a familiar and well settled rule of pleading that the petition should show the existence of that fund. It nowhere appearing in the petition that Henry Louderman left any personal estate at his decease, it is fatally defective, and the demurrer ought to have been sustained. But every erroneous ruling does not require a reversal of the judgment rendered in the court below.

Section 5115, Rev. Stat., provides that "the court in every stage of an action must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

The defendant below did not stand upon his demurrer to the petition, but filed an answer which supplied this defect in the petition; to this answer a demurrer was filed which admitted the truth of these averments in the answer, and upon which the case was finally disposed of; so that upon the whole record the error in overruling did not affect any of the substantial rights of the defendant below. The Ins. Co. v. Kelly, 24 O. S., 345, 357; Insurance Co. v. McGookey et al., 33 O. S., 555.

Upon the overruling of this demurrer the defendant filed an answer in substance as follows:

It first sets forth facts showing a total want of consideration passing to said Henry Louderman for the execution of the paper set forth in the petition.

It further avers: "That said pretended writing obligatory was not an instrument required by the laws of Ohio to be sealed. That the alleged and pretended seal attached thereto was simply a pen scrawl which defendant denies was a seal, or that the said pretended writing obligatory was a sealed instrument." * * * "That there is no personal property of said estate which can be applied to the payment of said writing obligatory. That the just and legal debts of said estate are more than all the personal property, and that all the real estate of said decedent was specifically devised."

A general demurrer to this answer was sustained, and this is the only other error alleged.

It is clear that the provision of this agreement in regard to the advancements to the grandchildren of Henry Louderman cannot and do not affect the rights of the plaintiff below; that this is not a legacy of Henry Judy, nor any advancement, nor in the nature of an executory devise. It is a contract with Henry Judy to pay him so much money out of the personal estate of Henry Louderman. It was undoubtedly the intention of Henry Louderman that his estate should not lose anything by reason of this payment, and so he made a provision for its repayment by his grandchildren, but with this part of the contract the plaintiff below had nothing to do. Nor do the allegations of the answer show that there are no personal assets of the estate in the hands of the plaintiff in error. Indeed the answer admits that there are personal assets, and the allegation that "the just and legal debts of said estate are more than all the personal property," only begs the question. This is a debt against the estate, or it is nothing. So that it only remains to consider the averments of the answer showing that there was no consideration for the contract, and the decision as to this branch of the case depend upon the effect to be given to this contract as a specialty. It is not denied in the answer that a seal is attached to the name of Henry Louderman. Its averments are, that this instrument of writing was not required by the laws of Ohio to be sealed; that the seal attached was simply a pen scrawl which is not a seal; and that this is not a sealed instrument. These averments, so far as they are substantive, are but conclusions of law on the part of the pleader, and do not controvert the fact that Henry Louderman adopted this scrawl as his seal. In the case of Osborn v. Kistler, 35 O. S., 99, 101, the court said: that under our statutes a scrawl

seal is the same as the wax or wafer seal of the common law; and that too, in an instrument which is not required by law to be sealed, and by affixing his name in front of this scrawl the maker adopted the device as his seal. No allegation of fraud or mistake is made in this case, and if a total want of consideration cannot be shown in an action at law upon a specialty, the court below did not err in sustaining the demurrer to the answer.

An examination of the text books and decisions upon the question of the purport and effect of a seal attached to an instrument shows that it was well settled, that under the common law a seal imported conclsively a consideration, and at law a party could not dispute it. Bouvier's Dictionary, *Contract;* Wharton Dictionary, *Consideration;* 2 Black. Com., 446; 2 Kent's Com., *463, 464; Walker's American Law, 474; 1 Parsons on Contracts, 428, and *note c;* 2 Mass., *162. That this was the law in Ohio down to February 24, 1834, is also well settled. Howe v. Dawson, T., 201; Reynolds et al. v. Rogers' Exrs, 5 O., 169, 177. At that date an Act was passed to amend an Act to regulate the practice in judicial courts (1 Curwen, 124), which provided, "That in any action founded upon any specialty or written contract for the payment of money or delivery of property, the defendant, by special plea, or by notice attached to and filed with the general issue, may allege the want or failure of the consideration in the whole or any part thereof." And it further provided that the same defense could be made at any stage of the pleadings or proceedings, saving, however, the rights of *bona fide* purchasers before due of negotiable paper.

March 4, 1852, an act was passed by the general assembly in pursuance of the requirements of sec. 1, art. 14, of the constitution, the first section of which reads as follows:

"Be it enacted, etc., That the governor of this state be and he is hereby authorized and required by and with the advice and consent of the senate, to appoint three commissioners, to be styled commissioners on practice and pleadings, to perform the duties herein specified; and it shall be the duty of the said commissioners to revise, reform, simplify and abridge the practice, pleading, forms and proceedings of the courts of record of this state, and as far as practicable and expedient, shall provide for the abolition of the distinct forms of the actions at law now in use, and for the administration of justice by a uniform mode of proceeding, without reference to any distinction between law and equity." 3 Curwen, 1746.

These commissioners performed their duties, and on March 11, 1853, the general assembly passed "An act to establish a Code of Civil Procedure" as prepared by them. (3 Curwen, 1938; 2 S. & C., 940.) This act took effect July 1, 1853, and sec. 606 thereof repealed the act of February 24, 1834, *supra*, in regard to defenses to sealed instruments. The ordinary effect of such a repeal would be to revive the rules of the common law, in regard to sealed instruments, but we cannot suppose that a commission which was appointed to "revise, reform, simplify and abridge" our pleading and practice would deliberately revive the distinction between sealed and unsealed instruments as to the consideration therefor, which then had nothing to recommend it except its antiquity. 1 Parsons on Contracts, p. 428; Walker's American Law, pp. 474, 475. And especially is this to be doubted when that distinction had been abrogated by an act of the legislature which had been in force for over 19 years prior to the adoption of the code without so far as we can learn any attempts to repeal or modify it. When the people had thus deliberately set their seal of disapprobation upon this technical distinction, we must believe that the commissioners, mindful of their duty, did not by their act restore it to our practice. That they did not do so, we think sufficiently appears from the code itself, for that the act of February 24, 1834, was subtantially embodied therein, is apparent upon a careful consideration of its provisions. Section 2 of the code was and is as follows (3 Curwen, 1938; 2 S. & C., 940; sec. 4948, Rev. Stat.)

"The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this code. Its provisions and all proceedings under it shall be liberally construed, with a view to promote its object, and assist parties in obtaining justice."

Section 93 of the code was and is as follows (3 Curwen, 1952; 2 S. & C., 978; sec. 5071, Rev. Stat.)

"The defendant may set forth in his answer as many grounds of defense, counter-claim and set-off as he may have, whether they be such as have been heretofore denominated legal or equitable or both."

"In arriving at the meaning and effect of this section, it is said by Mr. Pomeroy in his work on Equity Jurisprudence, vol. 3, sec. 1369: "It is important to determine, in the first place, the nature and meaning of an equitable defense. A defense is a right possessed by the defendant, arising from the facts alleged in his pleadings, which defeats the plaintiff's cause of action or claim for the remedy demanded by his action. An equitable defense is such a right which exists solely by virtue of equitable doctrines, and which was originally recognized by courts of equity alone. The right constituting an equitable defense may be one which, when consummated and enforced, confers upon the defendant some affirmative relief, clothing him with a paramount legal title or estate, and thus defeating the plaintiff's claim; or it may be purely defensive, which entitles the defendant to no affirmative relief, and which simply operates to bar the plaintiff's action. The general term equitable defense plainly includes both of these classes."

In Dobson v. Pearce, 12 N. Y., 156, 168, Johnson, J., said: "An equitable defense to a civil action is now as available as a legal defense. The question now is, *Ought the plaintiff*

*to recover?*—and anything which shows that he ought not, is available to the defendant, whether it was formerly of equitable or legal cognizance."

An equitable defense being any defense of which a court of equity would take cognizance, whether equitable relief was prayed for or it was only sought to defeat the plaintiff's claim, it remains to consider whether a court of equity regarded a seal with that sacredness with which it was regarded in a court of law. The authorities all agree that it did not. Indeed Mr. Pomeroy says, that "one of the earliest instances of equity breaking in upon the common law was its disregard of the sacredness of a seal." 1 Pomeroy Equity Jurisprudence, sec. 370.

And further: " Although the common law declared that a seal was conclusive evidence of a valuable consideration, equity, disregarding such form and looking at the reality, always required an actual consideration, and permits the want of it to be shown notwithstanding the seal, and applies this doctrine to covenants, settlements and executory agreements of every description." *Ibid*, sec. 383. From these authorities it is clear that sec. 93 of the code was intended to and did secure all the rights to makers of sealed instruments as to making the defense thereto of partial or total failure of consideration given them by the act of February 24, 1834, *supra*, and that that act was repealed, not with the intention of reviving the common law, but because its provisions were embodied in this section of the code. While we have no decision of our Supreme Court upon this question, we have the dictum of an eminent judge of that court which fully supports the conclusion to which we have arrived. In the case of Richardson v. Bates, 8 O. S., 257, Sutliff, J., at page 265, said : "·Under the statute of February 24, 1834, allowing the failure or part failure of consideration to be given in evidence, in a suit upon a specialty, the facts stated in this answer (showing failure of consideration) would have constituted a perfect defense. And the provision of the code, allowing a defendant to set forth in his answer equitable as well as legal grounds of defense, *permitted the same defense to be made in this case ;* and therefore the failure of consideration, stated in the answer, constituted a good defense." We have been cited to the cases of Wilson et al. v. Fleming et al., 13 O., 68, 74, and Osborn v. Kistler, 35 O. S., 99, by the counsel for defendant in error as supporting a contrary view. We do not so regard them.

In the case of Wilson et al. v. Fleming et al., *supra*, the judge deciding the case said that a seal *imported* a consideration, not that it was conclusive.

And so it was said in the case of Railway v. Oswald, 18 Kan., 336, that in a suit upon a specialty it was not necessary in the petition to allege a consideration therefor, as the bond itself imported a consideration, but that the defendant by answer could set up a want of consideration as a defense.

In the case of Osborn v. Kistler, *supra*, it was held that a scrawl seal was the equivalent of the wax seal of the common law.

In neither of the Ohio cases cited was the question of the right to make the defense of a want of consideration raised.

It follows from these authorities that the answer in this case, setting up as it did a want of consideration, constituted a good defense to the plaintiff's claim, and that the court erred in sustaining the demurrer thereto. For that error the judgment of the court of common pleas will be reversed with costs, the cause remanded to that court with instructions to overrule the demurrer to the answer, and for further proceedings according to law.

Mills Gardner, for plaintiff in error,
Hidy & Patton, for defendant in error.