## D. R. LEWIS ET AL., APPELLANTS, v. D. B. LEWIS, ET AL., RESPONDENTS.

PLEADING—SUIT TO REFORM A DEED.—In a suit to correct or reform a deed or written contract on the ground of mistake, the complaint should show distinctly what was the original agreement and understanding of the parties, and should point out with clearness and precision wherein there was a mistake, and should also show that the mistake did not arise from the gross negligence of the plaintiff.

IDEM.—In such a case the complaint should also state some circumstances relating to the nature or situation of the property, which show that an unfair advantage has been gained by the defendant through the mistake, and that it is against good conscience to allow the mistake to stand.

APPEAL from Polk County.

The facts are stated in the opinion of the Court.

*R. S. Strahan and John Kelsay*, for Appellants.

*R. P. Boise and P. C. Sullivan*, for Respondents.

By the Court, SHATTUCK, J.:

This suit was instituted in the court below by the appellants against the respondents, to correct an alleged mistake in a deed, and to enjoin an action at law for the recovery of possession of a portion of the land described in the deed.

The complaint alleges in substance that the plaintiffs, being owners of a certain donation land claim in Polk County (a description of which is set forth in the complaint), some time in the fall of 1855 entered into a verbal agreement with one Ira A. Hooker, whereby Hooker agreed to purchase a piece of land of the plaintiffs, situate in the southwest corner of their said donation claim; that the parties mutually agreed that one Hutchinson should survey the land included within said agreement, and ascertain the quantity of the same, and furnish a description thereof to be used in the deed that was to be made therefor; and that the said Hooker should pay therefor at the rate of six dollars per acre; that the said surveyor furnished a description, which was inserted in the deed, and is as follows: "Beginning at the southwest corner of David R. Lewis's land claim, as described in the field notes and plats of the United States in § 19; thence north one degree twenty-four minutes east, 59 chains distant; thence east 40 chains distant; thence south one degree twenty-four minutes west, 43.25 chains distant; thence south sixty-eight degrees twenty-five minutes west, 43 chains, to the place of beginning, containing 204.32 acres. The above tract is bounded on the west by the west line of David R. Lewis's claim, and on the southeast by the southeast line of David R. Lewis's claim."

That said Hooker paid plaintiffs, for said land, six dollars per acre, amounting to $1225.92; and they executed and delivered to him a deed, a copy of which is appended to the complaint, containing the above description, and dated December 20, 1855; that Hooker died in 1857, and the defendant, Delia B. Lewis, is his devisee, and succeeded to whatever rights Hooker had under the deed aforesaid; that the description contained in said deed was furnished by said Hutchinson, by accident, surprise and mistake, or through fraud, "the plaintiffs do not know which," and was false, and was not according to the agreement, intention or design of the plaintiff, or said Hooker.

That a true description of the real property agreed to be sold by plaintiffs to said Hooker, and included in the agreement aforesaid, and none other, is as follows: "Beginning

at the southwest corner of David R. Lewis's land claim, as described in the field notes and plats of the United States. in § 19; thence north one degree twenty-four minutes east, 54.50 chains; thence east 40 chains; thence south one degree twenty-four minutes west, 39.70 chains; thence south sixty-eight degrees twenty-five minutes west, 43 chains to the place of beginning, containing 186.32 acres."

It is also alleged that the description contained in the deed embraces eighteen acres more land than the last above mentioned description, which plaintiffs did not intend to sell, nor said Hooker to buy; that the plaintiffs remained, and have been continually since the date of the deed, in the exclusive occupation and possession of said eighteen acres; and that said Hooker, during his life, and his devisee, the defendant Delia, recognized plaintiffs' right and title until some time in 1870; and plaintiffs have, with the knowledge of the defendants, made permanent and valuable improvements thereon of the value of six hundred dollars.

The plaintiffs then aver the commencement, by defendant Delia, of an action at law against these plaintiffs to recover the possession of the said eighteen acres; prays an injunction against said action, and to have the deed reformed and corrected so as to convey only 186.37 acres, conformably to the alleged agreement and intention of the parties; averring also a tender by plaintiffs to the defendant, before suit brought, of an amount of money equal to the value of the eighteen acres, at six dollars an acre (the original purchase-price), without interest, and a willingness to submit to any terms or conditions of relief imposed by the court.

The defendants demurred to this complaint, on the ground that it did not state facts sufficient to constitute a cause of suit, or to entitle the plaintiffs to any relief; and on the special ground, that there was no equity on behalf of plaintiffs shown, in that there was no sufficient tender pleaded.

The court below sustained the demurrer and dismissed the complaint, and the plaintiffs bring this appeal.

It is to be observed that the complaint in this suit does not state directly and clearly what was the original verbal

agreement between the parties. It is said to be for a piece of land, the description and quantity of which was to be ascertained by a survey. But what data for the survey were agreed upon, if any, do not appear. We are not informed by the complaint whether the surveyor was to bound his survey by any known visible objects that were intended to limit the extent of the parcel to be conveyed, nor is it alleged that he was instructed to make the west line any particular number of chains long; nor that he was told to include a certain number of acres and no more. There is no allegation showing wherein the surveyor violated any specific instructions given him by the parties relative to the description, boundaries or quantity of the land which he was to survey. All these are matters that can only be *inferred* from the allegations of the complaint, and any inference as to any particular one of them is beset with doubt. It must also be noted that the conduct of the surveyor is character-ized by the complaint in the alternative as "accident, mistake and surprise, or fraud, the plaintiffs do not know which."

It is further to be observed that the description given in the deed differs from the one claimed by the plaintiffs only in the length of the lines. In both descriptions the starting-point is the same, and the west and southeast lines of the tracts are upon the same course, and as far as both reach are identical. In the deed the west line is stated to be 59 chains long; in the description contended for, that line is stated to be 54.50 chains, a difference of 4.50 chains.

It is also to be particularly noticed that the complaint shows upon its face that the plaintiffs received pay according to the terms of the agreement (six dollars an acre) for all the land described in the deed, including the eighteen acres now in controversy, and that the courses and distances stated in the deed include precisely the amount of land paid for. The case, as presented, is simply this: The plaintiffs sold for a price agreed upon and received by them, and conveyed, with covenants of warranty, 204.32 acres of land, but by some means remaining in possession, or being found, fifteen years after the conveyance, in possession of eighteen acres

of the tract conveyed, and being required to surrender the possession to the vendee, they come into a court of equity and ask, upon such general and alternative allegations as constitute this complaint, to be allowed to keep these eighteen acres and to have their deed altered by the court, so as to relieve them of their covenants of warranty, having offered before suit brought simply to return to the vendee the original purchase-price received fifteen years ago without interest.

If this Court shall hold that upon this complaint the plaintiffs are entitled to relief, a precedent will be furnished for attacking titles, deemed most secure, upon the most frivolous pretext, provided the grantors shall deem it to their advantage to rescind their bargains and are prepared to allege, in general terms, and procure proof of mistake, in description and quantity of land sold.

We do not, after careful examination, think that the law of this case is as the plaintiffs claim it to be, nor do we think that the authorities cited by the counsel for the plaintiffs sustain their positions concerning this complaint.

It is not every mistake in a conveyance that can call for the interposition of a court of equity.   (Willard's Eq. 71.)

To entitle the party to relief the fact must be *material*, and also such that he could not with reasonable diligence have obtained knowledge of it.   (Id. 70.)

In *Marvin* v. *Bennet* (26 Wend. 169), a case where a purchaser, who had received a deed for land and given back a mortgage to secure a part of the purchase-money, and on finding a deficiency in the quantity of land described, sought relief in equity, on the ground of mistake, against payment of the purchase-money for the amount of land deficient, the court say, that relief will not be granted if with ordinary vigilance the purchaser, before the completion of the contract, by *viewing* the premises or properly settling the description, might have guarded against the alleged mistake, and relief was denied.

The case here differs from *Marvin* v. *Bennet*, in respect to the party seeking relief.   In that case it was the purchaser who sued; in this it is the vendor: but the relief sought is

substantially the same in both, and the principle is as applicable to the one as to the other.

Again, the class of cases wherein courts of equity interfere to correct mistakes are said (1 Story Eq. Jur., § 138) to be those where the mistake is of so fundamental a character that the minds of the parties have never in fact met, or where an unconscionable advantage has been gained by mere mistake or misapprehension, and there was no gross negligence on the part of the plaintiff either in falling into the error or in not sooner claiming redress, and no intervening rights have accrued and the parties may still be placed in *statu quo*. But even in cases like these it is said that equity will interfere *in its discretion* in order to prevent intolerable injustice. The prevention of intolerable injustice appears to be the cause which, according to this authority, impels the court to grant relief.

The case now before us does not present a state of facts bringing it within any of the classes referred to by these authorities, nor is it one parallel to those cited by appellants' counsel. There was no injustice suffered by plaintiffs in having made a deed for two hundred and four acres of land, if they received the agreed price for that quantity, which the complaint shows.

This is not a case like *Gillespie* v. *Moon* (2 Johns. Ch. 585), where the agreement, clearly alleged and proven, was to sell and purchase only two hundred acres of land, but the deed was, by mistake, made to describe by metes and bounds a tract containing in fact two hundred and fifty acres. In that case the vendee had paid only according to his agreement, for two hundred acres, and was attempting unconscionably to hold fifty acres for which he had never paid anything, and which he had acquired through a mere mistake. The case presented other circumstances that rendered the existence of the deed, as made, a peculiar hardship to the vendor.

The case before us is not like the case of *Lindsay* v. *Davenport* (18 Ill. 380), where the deed described the "*northwest quarter*" of a certain section, while the land actually sold and paid for was the "*southeast quarter*,"—a totally

different and disconnected parcel, containing, as the evidence showed, less land, and sold for less than half the real value of the parcel erroneously described in the deed.

The allegations of the complaint in this case do not present a case like *Johnson* v. *Taber* (6 Selden, 319), where it appeared that the boundaries of the land sold were pointed out on the ground by the vendor to the vendee before the deed was made, and it appeared that the vendee understood and was informed by the vendor at the time that a certain tree and a fence shown him constituted the boundary, but by a mistake of courses and distances, recited in the deed, the boundary, as defined therein, was made to go beyond or across the fence and take in more land or other land than was pointed out to the vendee. In that case the vendor was relieved from his covenant of warranty, as to the land outside of the designated and understood boundaries, and the mistake in the deed substantially corrected.

Nor does this case present any such equities as *Brown* v. *Lamphear* (35 Vermont, 252), wherein it was alleged that there was an express agreement before the conveyance was made, that a certain spring and aqueduct, within the tract sold, on which the vendor depended for water to supply his dwelling-house, and other houses which he had contracted to supply with water, should be reserved and excepted, but by a mistake of the scrivener the reservation was not put into the deed, and the complainant signed it without reading it and without noticing the omission, having full confidence in the scrivener and supposing that the deed conformed to the agreement and understanding of the parties.

In that case the vendee attempted to hold property for which he had never paid anything and which he had not purchased. In addition to the great damage and inconvenience to which the vendor would be subjected, by having the spring taken from him, it appeared that the aqueduct and improvements, at the spring, had alone cost more than the entire purchase-price paid by the vendee for the land. The advantage sought by the vendee, through the mistake

in the deed, was unconscionable, and wrought a great injustice.

But in the case at bar there is no allegation that the boundaries were pointed out upon the ground before the survey was made; nor that the parties viewed the premises and gave instructions to the surveyor, which he violated in making his survey and description to be inserted in the deed. It does not appear that the eighteen acres in dispute are relatively of any greater value than the rest of the two hundred and four acres, or that the eighteen-acre tract contains any spring, or quarry, or mine, or timber, or watercourse, or any other thing rendering it of peculiar value to plaintiffs, and making it unconscionable for defendants—having paid for it according to agreement, as shown by the complaint—to keep it.

The only allegation raising any equity in favor of the plaintiffs is that concerning improvements, but that is not sufficient, because it does not appear what the improvements are, nor when they were made. Although it is alleged that they are permanent, yet they may have been only such as were necessary incidents to the use and occupation of the premises during the fifteen years that the plaintiffs aver they have been in possession, and only a fair offset to the value of such use and occupation. The improvements may have been made, so far as anything in the complaint shows to the contrary, since the plaintiffs knew of this alleged mistake, and since demand for possession was made.

Upon all the authorities cited upon the argument of this cause, the Court hold that in cases of this kind the complaint should distinctly show what was the original agreement and understanding of the parties, and should point out with clearness and precision wherein there was a mistake, and should show that it did not arise from gross negligence of the plaintiff. There should also appear some circumstances relating to the nature or situation of the property which shows an unfair advantage to have been gained by the defendant, and that it is unjust to allow the alleged mistake to stand.

The complaint in this cause, being defective in three particulars, is deemed insufficient.

The other point raised by the demurrer concerning the tender is not considered by the Court, the points referred to in this opinion being considered decisive of the case.

The decree of the court below is affirmed with costs.