Argued 17 January; decided 5 March; rehearing denied 13 August, 1900.

## SELLWOOD v. HENNEMAN.

[60 Pac. 12.]

1. REFORMATION OF INSTRUMENTS—PLEADING THE MISTAKE.—In suit to reform a deed for mistake in description, a complaint setting out both the true and the false descriptions is a sufficient compliance with the rule requiring such a complaint to distinctly show the original agreement, and point out wherein there is a mistake: *Ramsey* v. *Loomis*, 6 Or. 367, applied.

2. REFORMATION—MUTUAL MISTAKE—CONFIDENTIAL RELATION.—Where a reformation of an instrument is asked on the ground of mutual mistake, it is not necessary to show any relation of trust between the parties, though such a relationship would have to be shown if the suit was based on fraud.

3. REFORMATION—REMEDY AT LAW—MUTUAL MISTAKE.—In a suit to reform a deed, an objection that the purpose of the suit is to try title, for which plaintiff has an adequate remedy at law, is untenable, where the complaint avers mutual mistake of the parties as to the boundaries, since the averment is sufficient to confer jurisdiction, and to authorize reformation of the deed: *South Portland Land Co.* v. *Munger*, 36 Or. 457, cited.

From Clackamas: ALFRED F. SEARS, JR., Judge.

Bill by James R. W. Sellwood and others against P. J. Henneman and others to reform two deeds. It is alleged in the complaint that on September 7, 1880, plaintiffs and James R. W. Sellwood were the owners in fee and possessed of the following described premises, situate in Clackamas County, Oregon, to wit: Commencing at a stone in the center of the road at the intersection of land owned by J. R. W. Sellwood, H. P. Walker, F. Lehman,. and P. Hagenberger, in section 36, township 1 south, of range 1 east; thence south 13.06 chains; thence south 57° east, 8.30 chains; thence north 18.67 chains; thence south 81° west, 7.05 chains, to the place of beginning,— containing eleven and three-eightieths acres,—and on that day bargained and sold the same to the defendant J. G. Zinser for the sum of $75 per acre; that said tract was surveyed by N. W. Randall, the then surveyor of said county, who set stakes at each corner, and furnished a description thereof which by mistake was as follows: Commencing at said stone; thence south 13.06 chains;

thence south 57° east, 8.70 chains; thence north 18.90
chains; thence south 81° west, 7 chains, to the place of
beginning,—containing eleven and three-eightieths acres;
that on said day plaintiffs and James R. W. Sellwood exe-
cuted a deed to Zinser of the tract as described by the sur-
veyor, which by mutual mistake included a strip of land
adjoining that intended to be conveyed on the east, de-
scribed as follows: Beginning at a point in the said county
road north 81° east, 7.05 chains from said stone; thence
south 18.67 chains; thence south 57° east, 40 links; thence
north 89.90 chains; thence south 81° west, 47 links, to
the place of beginning,—containing three-fourths of an
acre more than was intended by either of said parties to
be conveyed; that on April 27, 1882, Zinser and wife
conveyed to the defendant P. J. Henneman all their in-
terest in said premises, by a deed containing the same
description as in that from the Sellwoods, but it was in-
tended thereby to convey only the tract so staked by
Randall; the stakes set by him, having been shown to
Henneman, who took the premises with knowledge of
the true boundaries thereof; that neither of the parties
to the suit discovered said mistake until September, 1891;
and that plaintiffs have succeeded to all the interest James
R. W. Sellwood had in the tract of land so erroneously
conveyed. The answer having denied the material alle-
gations of the complaint, a trial was had, resulting in a
decree reforming the deeds to Zinser and Henneman,
from which the latter appeals.     Affirmed.

For appellant there was a brief over the name of *Wil-
liams, Wood & Linthicum*, with an oral argument by *Mr.
George Henry Williams*.

For respondents there was a brief and an oral argument
by *Mr. Algernon Sydney Dresser*.

MR. JUSTICE MOORE, after stating the facts, delivered the opinion of the court.

1.  It is contended by appellant's counsel that the plaintiffs having failed to allege the contract entered into between him and Henneman, the complaint did not state facts sufficient to constitute a cause of suit, and hence the court erred in overruling the demurrer thereto.    It has been repeatedly held by this court that, in a suit to reform a deed or written contract on the ground of mistake, the complaint should distinctly show the original agreement of the parties, and point out with clearness and precision wherein there was a mistake :    *Lewis* v. *Lewis*, 5 Or. 169 ; *Stephens* v. *Murton*, 6 Or. 193 ;    *McCoy* v. *Bayley*, 8 Or. 196 ;    *Foster* v. *Schmeer*, 15 Or. 363 (15 Pac. 626);    *Hyland* v. *Hyland*, 19 Or. 51 (23 Pac. 811) ;    *Meier* v. *Kelly*, 20 Or. 86 (25 Pac. 73) ;    *Osborn* v. *Ketchum*, 25 Or. 352 (35 Pac. 972) ;    *Thornton* v. *Krimbel*, 28 Or. 271 (42 Pac. 995) .    In *Ramsey* v. *Loomis*, 6 Or. 367, BOISE, J., commenting upon the sufficiency of a complaint in a suit for the reformation of a deed, says :    ''All that is necessary in the complaint is that it shall plainly show to the court the alleged mistake which it is asked to correct, and, if the false description and the true description are both set out in the complaint, the court is informed of all the facts which are necessary to enable it to grant the relief prayed for.''    The complaint herein conforms to the rule announced in the case last cited, and, in our judgment, is sufficient.

2.    It is maintained that a court of equity will not reform a written instrument unless it clearly appears that some relations of trust or confidence existed between the parties, and, in support of the point contended for, appellant's counsel cite the cases of *Archer* v. *California Lum. Co*. 24 Or. 341 (33 Pac. 526);    *Kleinsorge* v. *Rohse*,

25 Or. 51 (34 Pac. 874), and *Hawkins* v. *Hawkins*, 50 Cal. 558. In each of these cases fraud was alleged as the ground for the reformation, and the rule announced therein is founded upon the legal principle that a party cannot escape the consequences of his own negligence in failing to examine the contents and terms of a written instrument which he is induced to execute, unless there exists between them some fiduciary relation or trust which would warrant an exercise of the confidence reposed : Story, Eq. Jur. § 307; *Rider* v. *Kelso*, 53 Iowa, 367 (5 N. W. 509). In the case at bar mutual mistake, and not fraud, is alleged as the ground for the reformation of the deeds ; and, this being so, it was not necessary to allege or prove that any relation of trust or confidence existed between plaintiffs and Zinser.

3. It is contended that the object of this suit is to try the title to the tract of land lying between the eastern boundary as given in Zinser's deed and the line as claimed by the plaintiffs, and that, as an action at law affords an adequate remedy for such purpose, a court of equity is without jurisdiction to try the case, and hence it was error not to dismiss the suit. It is alleged in the complaint that plaintiffs are the owners in fee and in the possession of the tract in dispute, and the court found that they were such owners, and that the defendants had no right, title, or interest therein. This allegation and finding would ordinarily seem to give force to the contention of appellant's counsel, but the averment in the complaint of a mutual mistake of the parties, which constitutes the gravamen of the suit, controls, and is sufficient to confer jurisdiction upon a court of equity, and to authorize it to reform the deeds : *South Portland Land Co.* v. *Munger*, 36 Or. 457 (60 Pac. 5). What is here said in regard to the adequacy of the legal remedy is also true of, and equally applicable to, the contention of appellant's counsel that

this is a suit to settle a disputed boundary, in which no peculiar equity has arisen from the conduct, situation, or relation of the parties, and hence the court erred in not appointing commissioners to establish and mark out upon the ground the boundary as required by statute (Hill's Ann. Laws, § 506).

Considering the case on the merits, the evidence shows that prior to the execution of the deed to Zinser a right had been granted to back the water to a given point in a creek flowing across the premises conveyed to him, which point was indicated by a stake standing near the creek, east of which plaintiffs refused to sell or convey any land ; that, in surveying the tract conveyed, Randall began at the northwest corner and ran south 13.06 chains to a fence ; thence south 57° east, 8.70 chains, to a point due south of a fir tree which was supposed to be in line with said stake ; thence north to said tree, on arriving at which it was discovered that it stood east of the stake. The defendant J. G. Zinser, being called as a witness for plaintiffs, testified in relation to the survey of the east boundary of said tract, as follows: "Then, after we got to the southeast, we turned and surveyed in a direct line north,—as I stated before, the bearing for that fir tree,—and, when we got near the creek, Mr. Sellwood discovered that we were past the stake he had described, and he got a little excited about it, and said we had to go to work and measure the whole place over. So Mr. Randall said : 'No, Mr. Sellwood, that is not necessary. We have got the surrounding now of the place, and you just set a stake how far east you want to sell this man, and then we measure from this line we already surveyed, right west, and deduct this out of the line we had already surveyed. We had the whole of the survey, any way, and the amount of acres we could figure up.' And so Mr. Sellwood understood that, and that is the way we made it." A stake in-

dicating the east boundary as agreed upon having been driven at the creek west of the stake marking the limit of the backwater, T. R. A. Sellwood and J. C. Hungerford each says that he went back to the southeast corner with Randall, who took up the stake he had set at that point, and, measuring back on the south boundary a sufficient distance to coincide with the stake set by Sellwood at the creek, the surveyor drove a stake for the permanent southeast corner of the tract. The evidence also shows that Randall extended the line north from the stake as set by Sellwood to a point in the center of the county road, at which he drove a stake for the northeast corner, in line with an old gatepost now standing on the south side of said road. Sellwood, in a few months after the survey was made, built a picket fence from the gate post south for some distance on the line to a point from which Zinser built a pole fence south on or near said line to a point on the land from which the brush and timber had not been cleared. Before conveying the tract to Henneman, Zinser pointed out to him the location of the stake at the southeast corner ; and Henneman, after securing a deed, cleared the timber and brush from the east boundary, and built a worm fence from Sellwood's picket fence south on or near the line to the permanent stake so set by Randall. In 1891 the tract described in Sellwood's deed was surveyed by course and distance, and it was then discovered that the fences so built were not located upon the line as there indicated, whereupon Henneman claimed that his premises extended to the boundary as given in the deed. It would be useless to quote more from, or to comment further upon, the testimony, which convinces us that, notwithstanding Randall reset the stake at the southeast corner, he neglected to make in his notes of the survey any deduction from the description of the length of the line as run for the south boundary to correspond with the

point agreed on at the creek, and that plaintiffs and Zinser, relying upon the accuracy of the description as given by him, executed and accepted the deed under a mutual mistake as to the east boundary; and, this being so, it follows that the decree is affirmed.    AFFIRMED.