'Argued December 11, decided December 30, 1913.

## SAYRE *v.* MOIR.

(137 Pac. 215.)

Reformation of Instruments—Evidence—Weight and Sufficiency.

1. Evidence, in a suit to reform a deed on the ground of mistake as to the location of the corner from which the description in the deed commenced, *held* insufficient to sustain a judgment for plaintiff.

Reformation of Instruments—Evidence—Weight and Sufficiency.

2. Relief will be granted in cases of written instruments only where there is a plain mistake clearly made out by satisfactory proof, and not when the evidence is loose or contradictory.

Reformation of Instruments—Evidence—Burden of Proof.

3. In a suit to reform a deed, the burden is on plaintiff to show that the mistake was mutual or shared in by both parties.

Reformation of Instruments—Grounds—Mistake.

4. To reform a deed on the ground of mistake, it should be shown that the mistake did not arise from the gross negligence of plaintiff, and that an unfair advantage has been gained by the defendant through the mistake, and that it is against good conscience to allow the mistake to stand.

> [As to causes and proceedings for reformation of instruments, see note in 65 Am. St. Rep. 481. As to reformation on ground of mistake, see notes in 30 Am. St. Rep. 621; 117 Am. St. Rep. 227.]

From Marion: WILLIAM GALLOWAY, Judge.

Department 2. Statement by MR. JUSTICE BEAN.

This is a suit brought by Ruth E. Sayre against John Moir and Jane Moir, his wife, to reform a deed

made by plaintiff to conform to the description of the property sold to defendants. The land in dispute is a strip about 18 inches in width along the west side of the defendants' property which plaintiff alleges was not intended to be conveyed. The Circuit Court rendered a decree in favor of plaintiff, and defendants appeal.

It is alleged in the complaint that on or about the 9th day of December, 1910, the plaintiff executed and delivered to the defendants a deed; that the description therein was erroneous, in that it commenced at the southeast corner of block No. 5 in Roberts' addition to the city of Salem, Oregon, in Marion County, instead of the southeast corner of the property then owned and actually inclosed by the plaintiff; that the measurement of 74 feet on Chemeketa Street was made from the southeast corner of the land so actually inclosed by the plaintiff to an iron stake in the boundary line of Chemeketa Street; that it was not the intention in the sale of the land to the defendants that the measurement should run farther west than said iron stake, and that the description was not to include any of the plaintiff's property lying west from two iron stakes, one planted in the southerly boundary of the block, and the other planted northerly therefrom at a distance of 82½ feet from the said southerly boundary; that, at the time the property was sold, it was the intention to convey to the defendants only such property of the plaintiff as was lying east of the iron stakes.

Plaintiff owned a tract of land in the southeast corner of block No. 5, Roberts' addition to the city of Salem, Oregon, 127 feet and 3 inches east and west on Chemeketa Street by 82½ feet north and south on Fourteenth Street. On the 9th day of December, 1910, in consideration of $2,850, plaintiff, Mrs. Sayre, executed a deed of the following described premises, to

wit: ''Beginning at the southeast corner of block No. 5, in Roberts' addition to the city of Salem, in Marion County, Oregon, and running thence westerly along the northerly limit of Chemeketa Street, 74 feet; thence northerly at right angles to Chemeketa Street aforesaid, 82½ feet; thence easterly parallel with Chemeketa Street aforesaid 74 feet to the westerly limit of Fourteenth Street; thence southerly along said westerly limit of Fourteenth Street, 82½ feet, to the place of beginning.''

The trial court decreed that the deed be reformed so as to describe the lot as follows: ''Beginning at the southeast corner of block No. 5, in Roberts' addition to the city of Salem, in Marion County, Oregon, and running thence westerly along the northerly limit of Chemeketa Street, 72½ feet more or less, to an iron pin; thence northerly at right angles to Chemeketa Street aforesaid, 82½ feet, to an iron pin; thence easterly parallel with Chemeketa Street aforesaid, 72½ feet, more or less, to the westerly limit of Fourteenth Street; thence southerly along said westerly limit of Fourteenth Street, 82½ feet, more or less, to the place of beginning.''

After the execution and delivery of the deed, Mr. Moir employed a surveyor to measure the ground for the purpose of constructing a line fence between his land and that of plaintiff. This survey disclosed that the 74 feet from the southeast corner of block No. 5 along the north side of Chemeketa Street would make Mr. Moir's west line about 18 inches farther west than plaintiff claims she had sold. Plaintiff maintains that the east line of the premises which she formerly owned on Fourteenth Street was that distance farther east than the true street line, and that she had had possession of such small strip over 20 years. Defendant

Moir refused to recognize this contention, as the result of which this suit was instituted.

REVERSED : SUIT DISMISSED.

For appellants there was a brief, with oral arguments by *Mr. A. O. Condit* and *Mr. George G. Bingham.*

For respondent there was a brief over the name of *Messrs. Carson & Brown,* with an oral argument by *Mr. John A. Carson.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. From the evidence it appears that in June, 1910, plaintiff and defendant John Moir commenced negotiations for the purchase of the real estate in controversy; that on the east side of the property there was a hedge which had been planted about two years previous; that during the time of the negotiations plaintiff measured off 74 feet with a tapeline from an old post near the sidewalk, whereas the surveyor fixed the true corner at about the center of the hedge and about 18 inches farther west. Some delay being caused in the completion of the abstract of title to the property, on August 9, 1910, Mrs. Sayre executed to Mr. Moir a contract for the sale of the tract, describing the same as 74 feet on Chemeketa Street by 82½ feet on Fourteenth Street. The survey was made in April, 1911, by W. J. Culver, deputy county surveyor, according to established monuments in that part of the city, measuring 74 feet from the southeast corner of the block. Plaintiff contends that she sold to defendants a tract extending west to a row of rose-bushes, while that described in the deed would include one half of the rose-bushes. Early in the negotiations Mr. Moir asked Mrs. Sayre how much land she would sell with the house, and she answered, "Up to the rose-

bush." He then inquired, "How much ground is
there?" She stated that she did not know, that they
would have to measure it. Mrs. Sayre states: That a
short time afterward, when they measured the lot, she
designated a peg or part of an old post just outside
the hedge as her (S. E.) corner, and said: "This is our
corner, supposed to be our corner; it has been ever
since we lived here, because the fence was here when
we came." And that they measured from there to the
rose-bush, where they drove an iron peg. That the
north line was measured and marked in a similar way.
This was before the contract was signed. Each party
cultivated to the line as measured until the survey.
Mr. Moir says: That, when Mrs. Sayre gave him a
price on the lot, she said that the size of the lot was
"75 feet on Chemeketa by 82½ feet on North Four-
teenth Street"; that he made a deposit of $50 on the
lot June 14, 1910. That after they moved into the
house, the first part of July, a controversy arose as to
the number of feet on Chemeketa Street that he was
to get, and that Mrs. Sayre claimed it was 73 feet.
That they compromised on 74 feet, the number which
was afterward inserted in the contract. That they
first measured with a three-foot measure, and about
a week later measured with a tapeline; plaintiff pla-
cing the end of the line on the cement sidewalk which
defendant had constructed on Fourteenth Street, and
measuring therefrom and setting the pegs. That he
then said: "This may be your measurement; as soon
as we get your deed and your abstract, we will have
it officially surveyed." That as soon as he got the
deed he employed Mr. Culver to do the surveying.

The fact that Mrs. Sayre assisted in measuring the
lot 74 feet from Fourteenth Street, or from what she
deemed to be the line on Fourteenth Street, would in-
dicate that she intended to sell 74 feet frontage on

68 Or.—25

Chemeketa Street. Whatever her understanding may have been, it appears from the record that Mr. Moir understood that he was purchasing the size of lot mentioned in the deed. The contract was made and earnest money paid June 14, 1910. The written memorandum was not signed until August 9th of that year, giving ample time to ascertain a definite description. The lot was given the same dimensions in the preliminary contract of that date as in the deed.

2. Relief will be granted in cases of written instruments only where there is a plain mistake clearly made out by satisfactory proof, and not when the evidence is loose or contradictory: 1 Story's Equity Juris. (13 ed.), § 157. Mr. Pomeroy, in his work on Equity Jurisprudence (3 ed., vol. 4, § 1376), says: "Equity has jurisdiction to reform written instruments in but two well-defined cases: (1) Where there is a mutual mistake—that is, where there has been a meeting of minds—an agreement actually entered into, but the contract, deed, settlement, or other instrument, in its written form, does not express what was really intended by the parties thereto; and (2) where there has been a mistake of one party accompanied by fraud or other inequitable conduct of the remaining parties." The plaintiff has failed to prove a cause coming within either of these cases.

3. It is not shown that the mistake, if any, was mutual or shared in by both parties. Upon this issue the burden of proof is upon the plaintiff: *Stein* v. *Phillips*, 47 Or. 545, 549 (84 Pac. 793); *King* v. *Holbrook*, 38 Or. 452, 461 (63 Pac. 651). It is not an uncommon occurrence for one to purchase a city lot by the front foot. Equity does not seem to require that the defendant should take, or attempt to take, a portion of the 74 feet which he purchased, in the street; or that the deed should describe any less land than he

purchased. The real cause of the controversy was a misunderstanding on the part of plaintiff as to the true location of the east line of the block. This can be definitely located from the plat.

4. In order to reform a deed on the ground of mistake, it should be shown that the mistake did not arise from the gross negligence of plaintiff, and that the circumstances are such that an unfair advantage has been gained by the defendant through the mistake, and that it is against good conscience to allow such mistake to stand: *Lewis* v. *Lewis,* 5 Or. 169. It is not attempted to be proved that the price paid for the part of the lot conveyed is inadequate. It is not shown by a preponderance of the evidence that the defendants obtained any more land by the deed than they expected to obtain by the terms of the original contract. About the first question asked of plaintiff was in regard to the size of the lot. The evidence in this suit does not present a case like *Johnson* v. *Taber,* 10 N. Y. 319, where land not owned by the grantor, and which neither of the parties intended to include in the conveyance, was by mistake embraced in the description therein. In the case at bar the proof does not require the interposition of a court of equity to prevent an injustice.

It follows that the decree of the lower court must be reversed and one entered here dismissing plaintiff's complaint. REVERSED: SUIT DISMISSED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE EAKIN and MR. JUSTICE MCNARY concur.