Argued June 8; affirmed July 24, 1934

# TEACHERS' RETIREMENT FUND ASSOCIA-
# TION *v.* PIRIE ET AL.

(34 P. (2d) 660)

*Robert F. Maguire,* of Portland (Maguire & Shields and Delmas R. Richmond, all of Portland, on the brief), for appellant.

*John D. Galey,* of Portland (Beckman & Galey, of Portland, on the brief), for respondent Teachers' Retirement Fund Association.

*Bartlett Cole,* of Portland (Husted & Husted, of Portland, on the brief), for respondents.

BEAN, J. The appellant, Isaac D. Hunt, denies that he agreed to assume the mortgage and questions the construction of the assumption clause of the deed from Pirie and Husted, and their wives, and, by his

cross-complaint, seeks a reformation thereof upon the ground that the assumption clause was placed in the deed by mistake or by fraud. These are the only issues before this court and affect only the matter of the liability of appellant Hunt to the plaintiff, or to the rest of the mortgagors, Pirie and Husted and their wives, for the deficiency due the plaintiff after the sale of the mortgaged premises.

The trial court held that defendant Hunt accepted the deed, and the court properly construed the deed to the effect that the mortgage was assumed by defendant Hunt. The deed was dated March 1, 1928. George Pirie and Rose M. Pirie, husband and wife, owned an undivided one-half of the 21st and Flanders streets property, as an estate by the entirety, and Glenn E. Husted and Mary S. Husted, husband and wife, owned the other half in the same manner. The deed fully describes the property, and then provides for Hunt

"To have and to hold the foregoing described and granted premises, with all the rights, easements and appurtenances thereunto belonging or in any wise appertaining unto said Isaac D. Hunt, his heirs and assigns forever, subject to the following: to the principal and interest of a mortgage thereon for the principal sum of seventeen thousand five hundred dollars ($17,500) to Teachers' Retirement Fund Association of School District No. 1, Multnomah County, Oregon, which mortgage is dated April 7, 1925, and is recorded in the records of said County of Multnomah in book 1043 of mortgages at page 396; to a lease of a one story building thereon at 106 North 21st Street to C. Clyde Van Gorder, dated November 19, 1924, for five years from February 1, 1925, wherein the tenant has the option to renew the lease for another period of five years, upon the terms and at the rental basis therein set forth;  *   *   *''

Then follows similar descriptions of three other leases, with lengthy recitals of the conditions. Then follows this language:

"any and all of the obligations and agreements of which to be paid or performed by the Grantors herein are by the Grantee herein, for himself, his heirs and assigns, hereby assumed and agreed to be paid and performed, but with the right in the Grantee to have and receive the rent reserved in said leases."

Then follows a covenant of warranty to "warrant and defend the same unto the Grantee, his heirs and assigns, forever, against the lawful claims and demands of all persons, except as hereinbefore set forth".

Defendant Hunt seeks to reform the deed by adding the word "leases" so that the assumption clause will read as follows: "any and all of the obligations and agreements of which leases to be paid or performed by the Grantors", etc.

The transactions between the Piries and Husteds, who were called the vendors, upon the one hand, and Isaac D. Hunt, who was called the purchaser as shown by a written memorandum, on the other, were that the vendors should sell and convey by warranty deed to the purchaser, clear of encumbrances, except as set forth in the deed, the 21st and Flanders streets property. In consideration thereof the purchaser, Hunt, agreed to sell and convey by warranty deed to the vendors, free and clear of any and all encumbrances, a parcel of property situated in the said city and particularly described and known as the North 18th and Upshur streets property in said city, "together with railroad trackage rights for the one hundred (100) feet of frontage on Upshur Street; and in further consideration thereof the Purchaser agrees to pay the Vendors the sum of five thousand dollars ($5,000)".

It is then provided that the vendors shall pay the 1927 taxes, due and payable, the first half in May, and the second half in November, 1928; that each of the parties should furnish an abstract of title or title insurance policy; and that the interest, rent and insurance were to be adjusted as of the date of exchange of deeds and payment of the money above mentioned. The preliminary memorandum to the foregoing effect was signed on February 17, 1928, by George Pirie, Glenn E. Husted and Isaac D. Hunt, but not by their wives. The deeds, after being fully executed, were exchanged on or about March 5, 1928. Mr. Glenn E. Husted, who is a practicing attorney, took the deed to Hunt's office and submitted the same to him, and, as Mr. Hunt states, he read the deed. Hunt handed the deed from Hunt to the Husteds and Piries to Mr. Husted. Hunt claims and alleges, in effect, that while he read the deed and the assumption clause contained therein, he did not understand that the clause referred to anything more than the leases. After fully describing the mortgage and the leases, the assumption clause read as follows: "any and all of the obligations and agreements of which to be paid or performed by the Grantors herein are by the Grantee herein, for himself, his heirs and assigns, hereby assumed and agreed to be paid and performed". It is difficult to conjecture how Mr. Hunt could think that he assumed and agreed to pay only the leases. The leases, for the most part, if not all, provided for the payment of rent, which would naturally be paid to Hunt after he received the deed from the Piries and Husteds. The only thing that might be claimed to have the semblance of payment by Hunt in regard to the leases, was that there had been deposits made with the Piries and Husteds, either as a consideration for the execution of two leases or as

security for the rent, and a certain sum, in one case $25 per month, was to be deducted from the monthly rental, reducing the amount that the tenant would pay. Mr. Hunt is an attorney at law, but is not now practicing; he has also been engaged in the banking and investment business and seems to be an experienced business man. He complains because Husted did not tell him that the deed contained the assumption clause. It does not appear that Hunt told Mr. Husted what was contained in the deed from Hunt to the Piries and Husteds, and it is difficult to see any more reason why Mr. Husted would call attention of Hunt to the assumption clause than to the description of the land, or other parts of the deed. Husted submitted the deed to Hunt to read, and thereby called his attention to the whole of the deed.

It was first claimed by Hunt that the preliminary agreement of February 17, 1928, contained a clause that Hunt should not assume the mortgage. However, he recedes from that position somewhat in his testimony, and the agreement shows that that matter is not mentioned in the preliminary contract. Neither did it contain an agreement upon the part of the wives of George Pirie and Glenn E. Husted that they would convey the land. In making the deal, Mr. Van Borstel, a realtor, acted on behalf of the Piries and Husteds, and Mr. Hart, a realtor, acted on behalf of Mr. Hunt.

In the description of the real estate to be conveyed by Hunt to the Piries and Husteds, certain railroad trackage rights for the 100 feet frontage on Upshur street was mentioned in the contract of sale. After the original memorandum was executed, it was discovered that Mr. Hunt had no trackage rights. There was a track extending along the street beside the property on Upshur street, to which Hunt says there was a right

to be obtained by paying for the same, and on account thereof negotiations in regard to the real estate deal were suspended for a time, and Mr. Husted's version of the matter is that through the real estate dealers it was arranged that they should take the Upshur street property without any trackage rights, which afterwards cost $300, and that he should credit or deliver to Hunt the balance of the unused portion of the money paid upon the execution of the leases in consideration thereof, or as security for the payment of rent, and that Hunt then agreed to assume the mortgage. Mr. Hunt testified that he said during the negotiations that he would not assume a mortgage, but that the only person he ever told was his agent, Mr. Hart. At the time the deal was made, the 21st and Flanders streets property was good income-bearing property, the rents being about $300 per month, and evidently it was not expected that the mortgage would ever be foreclosed. Hunt, by deed dated September 24, 1929, conveyed the 21st and Flanders streets property to Agathon Farm Company, and the assumption clause was thereafter given special attention by Mr. Hunt and the other party, yet Mr. Hunt made no effort to obtain a correction or reformation of the deed in question until this suit was instituted to foreclose the mortgage.

The learned trial judge, after describing the transaction between the parties, held as follows:

"the fact that there was a writing which very largely substantially expressed their agreement doesn't change the rule, to my mind. I think that when they came and mutually exchanged deeds, having read them, and recorded them, that they washed out the previous transaction. I think there was a merger of their previous negotiations. I think for the purposes of this question it was an executed transaction when the deeds were exchanged, notwithstanding the fact that there

may have been covenants in the respective deeds, and I think they arrived at their final and definite agreement.''

We are in accord with such opinion. The defendant Isaac D. Hunt has failed to sustain the allegations of his cross-complaint by proof. His testimony is not clear, cogent or convincing, as is required by courts of equity before reforming written instruments. The weight of the testimony is in favor of the respondents and does not sustain a reformation of the assumption clause in the deed: *Sayre v. Moir,* 68 Or. 381 (137 P. 215) ; *Sellwood v. Henneman,* 36 Or. 575, 577 (60 P. 12). Reformation is an extreme remedy and will only be granted on proof that is clear, cogent and convincing. The presumption is that private transactions have been fair and regular. Every presumption is to be invoked in favor of the clearness of the written instrument. It is important that the sanctity of the written agreement be preserved: *Dolph v. Lennon's Inc.,* 109 Or. 336, 353, 354 (220 P. 161); *L. B. Menefee Lbr. Co. v. Gamble,* 119 Or. 224 (242 P. 628) ; *Manley v. Smith,* 88 Or. 176 (171 P. 897); § 9-807, subd. 19, Oregon Code 1930.

██ The natural conclusion of the grantors in their negotiations in regard to the mortgage would be that Hunt would protect the property by paying the mortgage. He fully admits that he assumed the covenants contained in the leases, and in order to protect the lessee in the quiet enjoyment of the property, it would have been necessary for him to prevent a foreclosure of the mortgage. See *Edwards v. Perkins,* 7 Or. 149; *Obermeier v. Mattison,* 98 Or. 195 (192 P. 283, 193 P. 915). The assumption clause contained in the deed is couched in strong language. It refers to any  and all of the obligations and agreements to be performed by

the grantors, which Hunt agreed to pay. It would seem that Hunt so construed the assumption clause by seeking a reformation thereof by his cross-complaint. See *Dixon v. Fox,* 127 Or. 446 (271 P. 593).

The appellant claims to have been somewhat confused by a comma inserted in the last lease described in the deed, and after the words "April 1, 1928". This punctuation is not important. It was said by the federal court in *Holmes v. Phenix Ins. Co.,* 98 Fed. 240, 47 L. R. A. 308: "But the words control the punctuation marks, and not the punctuation marks the words." In *Ewing v. Burnet,* 11 Pet. 41 (9 L. Ed. 624), the federal court held as follows:

"Punctuation is a most fallible standard by which to interpret a writing; it may be resorted to when all other means fail, but the court will first take the instrument by its four corners, in order to ascertain its true meaning; if that is apparent on judicially inspecting the whole, the punctuation will not be suffered to change it."

In 18 C. J. 270, § 231, we read:

"As a general rule a deed made in full execution of a contract of sale of land merges the provisions of the contract therein, and this rule extends to and includes all prior negotiations and agreements leading up to the execution of the deed, all prior proposals and stipulations, and oral agreements, including promises made contemporaneously with the execution of the deed."

We cannot bring ourselves to conclude that the assumption clause referred to contains any ambiguity. While the deed is lengthy, the language, particularly of the assumption clause, is as plain as the English language could well make it.

The decree of the circuit court is right and is affirmed.

Rossman and Bailey, JJ., not sitting.