Argued April 17; reversed June 11, 1935

# TEACHERS' RETIREMENT FUND ASSOCIATION v. PIRIE ET AL.

### (46 P. (2d) 105)

*Robert F. Maguire,* of Portland (Maguire & Shields and Delmas R. Richmond, all of Portland, on the brief), for appellant.

*John D. Galey,* of Portland (Beckman & Galey, of Portland, on the brief), for respondents.

BEAN, J. This is an appeal from an order confirming the sheriff's sale made upon a decree of foreclosure. The case was before this court on a prior hearing (see 147 Or. 629, 34 P. (2d) 660), where the trial court's decree was affirmed. That decree provided that certain properties, located at Twenty-first and Flanders streets in Portland, Oregon, be sold to satisfy a $17,500 mortgage held by the plaintiff, Teachers' Retirement Fund Association. This mortgage was executed on April 7, 1925. On March 1, 1928, the mortgagors conveyed the property to defendant-appellant Isaac D. Hunt, who assumed the payment of the mortgage. Suit to foreclose was commenced April 1, 1932, and a decree was entered on June 11, 1933. The Twenty-first and Flanders street property was deeded to Hunt in an exchange of properties. At that time the value of the Flanders street property was estimated at $37,500. At the trial

of the cause the defendants prayed the court to fix an upset price for the property, and both parties offered testimony as to the present fair market value thereof. The appraisal, when the mortgage was made, was $35,000. The fair market value at the time of the trial was estimated by one of plaintiff's witnesses as $20,000, and another at $21,000. One of defendant's witnesses estimated the value at $26,000, and another at $23,000. The basis of value was the fair market value at the present time, in view of the depressed market conditions, due to economic stress. The trial court declined to fix an upset or minimum price. At a sale on August 25, 1933, the only bidder was the mortgagee association, which bid $15,000, $5,000 less than the lowest appraisement made by the mortgagee's own expert witness, and $11,000 less than the highest appraisal made by the defendants' witness.

The defendants filed their objections to the confirmation of sale, showing that the unequaled and unprecedented economic depression had destroyed the market for real estate; that the price paid was so grossly inadequate to the actual value of the property as to amount to confiscation; that to confirm the sale was to permit the plaintiff to unjustly enrich itself at the expense of defendants and that the value of the property was so great as to preclude the establishment of a fair price by competitive bidding alone, and that by reason of the existing conditions it could not be said that the property had been sold at a fair price.

The trial court overruled the objections and confirmed the sale to the mortgagee.

Defendant Hunt appealed, and contends that the present unprecedented economic depression completely destroyed all markets for real estate, citing *Federal Title & Mortgage Co. v. Lowenstein,* 113 N. J. Eq. 200

(166.Atl. 538); *Suring State Bank v. Giese,* 210 Wis. 489 (246 N. W. 556, 85 A. L. R. 1477); *Home Bldg. & Loan Ass'n v. Blaisdell,* 290 U. S. 398 (54 S. Ct. 231, 78 L. Ed. 413, 88 A. L. R. 1481); 81 Univ. of Penn. Law Rev. 884; that where there is no market there is no competitive bidding, and when there is no competitive bidding no reasonable price can be obtained, citing *Federal Title & Mortgage Co. v. Lowenstein,* supra; *Suring State Bank v. Giese,* supra; that inadequacy of price coupled with any circumstances rendering the sale unfair warrants the denial of confirmation by the equity court, citing *Federal Title & Mortgage Co. v. Lowenstein,* supra; *Suring State Bank v. Giese,* supra, 42 C. J. 223, § 1861; Annot. 85 A. L. R. 1481; Annot. 8 A. L. R. 1001; that lack of competitive bidding at a forced sale results in the obtaining of an inadequate price, a circumstance rendering the sale unfair, and warrants the denial of confirmation, citing *Federal Title & Mortgage Co. v. Lowenstein,* supra; *Suring State Bank v. Giese,* supra; 81 Univ. of Penn. Law Rev. 884; that a foreclosure sale that is unfair, unjust and inequitable may be relieved against by the court denying confirmation until the reasonable value of the property is credited upon the decree, or by denying confirmation and ordering a resale with an upset price, citing *Suring State Bank v. Giese,* supra, and *Federal Title & Mortgage Co. v. Lowenstein,* supra.

Section 3-409, Oregon Code 1930, provides that the judgment debtor may file with the clerk within ten days after the return of the execution his objections thereto, and further provides:

" (2) If such objections be filed, the court or judge thereof shall, notwithstanding, allow the order confirming the sale, unless on the hearing of the motion it shall satisfactorily appear that there were substantial ir-

regularities in the proceedings concerning the sale, to the probable loss or injury of the party objecting. In the latter case, the court or judge shall disallow the motion, and direct that the property be resold, in whole or in part, as the case may be, as upon an execution received of that date;"

Plaintiff contends that this statute is mandatory. The plaintiff argues that inadequacy of price, when not so gross as to shock the conscience, and when not attended by any further circumstance than that of the present depressed condition of the real estate market, does not constitute a substantial irregularity within the meaning of the statute and decisions, citing *Nodine v. Richmond,* 48 Or. 527 (87 P. 775); *Michigan Trust Co. v. Cody,* 264 Mich. 258 (249 N. W. 844); *Kenly v. Huntingdon Bldg. Ass'n,* 166 Md. 182 (170 Atl. 526, 90 A. L. R. 1321); *Lathrop v. Tracy,* 24 Colo. 382 (51 P. 486, 65 Am. St. Rep. 229). Appellant Hunt submits that an unprecedented economic stress of the magnitude of this depression is a circumstance which, if coupled with inadequate price, imposes a duty upon a court of equity to deny confirmation.

■ The courts take judicial notice of the economic catastrophe from which this country has been and still is suffering, and it has resulted in the destruction of ready markets for all kinds of property, real and personal. It has impoverished those of supposed financial security. It has caused the loss of the lifetime savings of hundreds of thousands of home owners and farmers. It has imperiled, and in many instances destroyed, business enterprises of known value and worth and of conservative and efficient management. The situation has been recognized by the courts. Confronted with this critical economic condition, the federal government passed the National Recovery Act. The states of New

York, New Jersey, Iowa, Nebraska, Montana, Oklahoma, Arizona, Minnesota, Kansas, Idaho, and others, have enacted special laws for the purpose of relieving mortgagors from the effects of the crisis. Congress, in addition to many extraordinary measures looking to the relief of the mortgage debtor, passed an act to supply funds whereby mortgagors of homes might be able to refinance their mortgages. The supreme court of the United States, as well as many state courts, took judicial notice of the economic depression. See *Atchison, T. & S. F. R. Co. v. United States,* 284 U. S. 248 (52 S. Ct. 146, 76 L. Ed. 273). The United States supreme court, realizing the necessity for expenditure, forestalled foreclosure proceedings and took steps heretofore unnecessary in order to relieve the unprecedented situation of the debtor.

■ It is a matter of common knowledge that within the last few years land values have shrunk enormously. Loans made a few years ago upon the basis of the then going-values cannot possibly be replaced on the basis of present values. The case at bar is a fair example. Property worth $35,000 at the time the mortgage was executed, bid in by the only bidder, the mortgagee, for $15,000.

In the celebrated Minnesota mortgage moratorium case, *Home Bldg. & Loan Ass'n v. Blaisdell,* supra, the supreme court of the United States recognized that there existed in government the power to meet emergencies even though the legislative enactments are novel and heretofore unheard of, and as to the rights of courts of equity to control foreclosure sales, Chief Justice Hughes said:

"In the absence of legislation, courts of equity have exercised jurisdiction in suits for the foreclosure of mortgages to fix the time and terms of sale and to refuse to confirm sales upon equitable grounds where

they were found to be unfair or inadequacy of price was so gross as to shock the conscience. The 'equity of redemption' is the creature of equity. While courts of equity could not alter the legal effect of the forfeiture of the estate at common law on breach of condition, they succeeded, operating on the conscience of the mortgagee, in maintaining that it was unreasonable that he should retain for his own benefit what was intended as a mere security; that the breach of condition was in the nature of a penalty, which ought to be relieved against, and that the mortgagor had an equity to redeem on payment of principal, interest and costs, notwithstanding the forfeiture at law.''

During this devastating condition, and perhaps at the depth of the depression, the mortgagee association forced a sale of the property at Twenty-first and Flanders street to cover their $17,500 mortgage. The mortgagee purchased the property for $15,000 and obtained a deficiency judgment against Hunt for the balance, amounting to about $6,500.

In the case determined upon the prior appeal, appellant Hunt contested the allegation that he assumed the payment of this mortgage when he traded for the property. The litigation was quite spirited, and it may be that a rather unfriendly feeling against Hunt was engendered.

In *Tripp v. Cook*, 26 Wendell (N. Y.) 143, it is said:

''The mortgagor and those who stand in his place and share in his losses have a right to be protected, so far as is consistent with the mortgagee's rights, against needless sacrifice of their property, whilst the mortgagee can claim nothing beyond the amount of his loan. Hence, as between these parties only, if from any cause whatever, the mortgaged property should be sold very far below its market value, to the injury of the owner or of others interested in it under him, as his sureties or otherwise, it would always be a claim of strict justice, to allow the opportunity of a second sale, upon such terms as will secure the mortgagee's debt.   *   *   *

"Where the buyer is the holder of the mortgage he must surely be content if his debt is paid. He has commonly an entire control over the proceedings and sale, and has no right to use it for any purpose of advantage beyond securing himself. Nor does the holder stand upon the same footing of public policy with other buyers. He seldom purchases for investment or use. He bids to secure himself, and when he buys in, he takes the property in payment of so much debt.''

■ Inadequacy of price, coupled with circumstances rendering the sale unfair, has usually been held to constitute sufficient grounds to warrant a court of equity in setting aside the sale or in denying confirmation. A true statement of the rule, as contained in an annotation in 85 A. L. R. 1481, is as follows:

"It is the general rule that in the absence of fraud and unfairness, mere inadequacy of price will not invalidate a foreclosure sale, unless the price is so grossly inadequate and unconscionable as to shock the moral sense, or unless there be additional circumstances against its fairness.''

The cases appear to be in accord that a foreclosure sale will be set aside when there is an inadequate price coupled with other circumstances which would render the sale inequitable: *Griswold v. Barden,* 146 Wis. 35, 37 (130 N. W. 952). In an annotation in 8 A. L. R. 1001, the author sets forth a long array of cases from practically every jurisdiction. It is there said:

"It will be observed that many cases are cited below to the proposition that mere inadequacy of price alone is not sufficient to invalidate the sale of land under a power in a mortgage or deed of trust. These are cases where the rule is not qualified. The reader, however, will understand that these cases were not necessarily decided on the principle that no inadequacy of price could be great enough to demand the interference of a court of equity. Comparatively few of the cases are so definite. It will also be observed that there is a considerable number of cases where the court, while de-

clining to interfere, suggests or declares that there might be an inadequacy of price great enough to require interference, but that, on the other hand, there are very few cases in which sales under such powers have been set aside for inadequacy of price alone. It is clear that the courts prefer to find some other element of attack than inadequacy of price, even when that is very great."

It is stated in 42 C. J. 223, § 1861, that inadequacy of price, taken in connection with other circumstances causing the sacrifice is a justification for the refusal to confirm, "as where the inadequacy of price is coupled with irregularities, or slight circumstances of unfairness, or where the inadequacy of price is gross and there is no right of redemption, or where the circumstances indicate that statutory standards as to price were not met. * * * Inadequacy of price as ground for setting aside a sale has greater weight with the court when urged in opposition to confirmation than where it is urged as a ground for setting aside the sale after confirmation".

In normal times a difference in the sale price on execution and the value of the property, of $6,000 to $11,000, might not be so great as to shock the conscience of a court of equity, but in times like the present depression such an amount might be sufficient to financially wreck a man who, under other circumstances, might be considered well-to-do.

■■ It is urged by plaintiffs that Hunt traded for the premises as a matter of speculation. This is no excuse for taking an unfair advantage in the sale of property upon execution. Most of the transfers of title to real estate, that have been made during the past few years, have been exchanges. Where, by reason of economic conditions, competitive bidding is destroyed, a judicial sale is not evidence of value, and amounts merely to a declaration by the judgment creditor that

he elects to take the property over at a price determined by himself and to credit such amount on the judgment. This principle is enunciated by the New Jersey court in the sale of *Federal Title and Mortgage Co. v. Lowenstein,* supra, in.the following language:

"The reason back of the rule that confirmation of judicial sales will not be refused on the ground of mere inadequacy of price is that it is considered 'of the greatest importance to encourage bidding by giving to every bidder the benefit of bids made in good faith and without collusion or misconduct.' Morrisse v. Inglis, 46 N. J. Eq. 306 (19 Atl. 16, 17). However, 'this rule does not rest upon the right of a purchaser, because when he bids he understands that it is subject to the approval of the court; but it rests upon the grounds of public policy.' Ryan v. Wilson, supra.

"Its ineffectiveness to encourage competitive bidding in these times of stress is clearly demonstrated by the record of sheriff's sales on May 2d, above stated. There is no longer any competitive bidding at foreclosure sales, and the reason for the rule has temporarily ceased to exist. The reason for the rule having disappeared, the rule itself should fall or its application be suspended until its potency as a factor in producing competitive bidding is restored. * * * The rule as shown by the cases has invariably been applied to sales where there has been competitive bidding, not to those where there has been but a single nominal bid."

In *Suring State Bank v. Giese,* supra, the court said:

"The court may decline to confirm the sale where the bid is substantially inadequate. * * *

"This doctrine is also stated in Kremer v. Thwaits, 105 Wis. 534, 81 N. W. 654, and Johnson v. Goult, 106 Wis. 247, 82 N. W. 139. What was said in the Griswold Case is applicable here, when the fact of an inadequate price is coupled with an emergency which operates to prevent competitive bidding. A court of equity is justified in refusing to confirm the sale and in ordering a resale."

In the New Jersey case the court pointed out that constitutionally it had succeeded to all the powers and jurisdiction anciently exercised by the English High Court of Chancery, and that inasmuch as the English Chancery Court had inherent power to order a sale of mortgaged premises, to fix valuations upon strict foreclosure for the purpose of determining the liability of the mortgagor and mortgagee, and inasmuch as the present sale was in effect a strict foreclosure, the ancient practice of appraising the property for the purpose of fixing the deficiency, originally adopted for the protection of the mortgagee, should now be invoked for the protection of the mortgagor.

■ Courts which have a true conception of the philosophy of equity constantly reiterate the fact that equity meets all conditions; that human ingenuity and human affairs can not create a condition which the long arm of the court of equity can not reach if injustice or wrong would otherwise result. See *Harrigan v. Gilchrist,* 121 Wis. 127 (99 N. W. 909, 936); *Rice v. Van Vranken,* 132 Misc. 82 (229 N. Y. S. 32).

■ We do not find any decisions which deny courts of equity power or jurisdiction to prevent injustices of this kind, particularly where the wrong sought to be prevented is one arising out of proceedings pending in equity.

The mortgaged property in question consists of a lot 100 feet by 100 feet, with a large residence and small storerooms, formerly renting for $300 per month. At the time of the hearing the rents were reduced to $158 and some cents. It is located in a thriving part of the city of Portland, near several large apartment houses.

In *Farmers' Loan Co. v. O. P. R. R. Co.,* 28 Or. 44 (40 P. 1089), this court referred to the rule that inadequacy of price, sufficient to set aside the public sale of property, must be so gross as to shock the

conscience where there are no confidential relations existing between the parties and no proof of fraud. There was involved the sale of the Oregon Pacific R. R. for $100,000. The court endeavored for about four years to obtain a better price.

In the present case we do not see our way clear to fix an upset or minimum price for the sale of the property, but we think that an endeavor should be made to obtain a more equitable adjustment of the matter, and that the sale upon execution should be set aside and the property again offered for sale. We do not in any way criticize the decree of the learned trial judge, and there was good reason for that court to feel some hesitancy in enunciating an application of an old rule to a new situation. Where old rules are varied by the circuit court, there is danger of being a want of uniformity in the several circuit courts.

It has been held that an application for resale will be regarded with more indulgence when the mortgagee has become the purchaser than when a mere stranger is the purchaser: 19 R. C. L. 585, § 399.

We can see no possible chance for the plaintiff to lose any part of its security or debt by again exposing the real estate for sale upon execution under the condition named. We base this upon the testimony on the part of the plaintiff as to the value of the real estate and taking into consideration the fact that there is a lien of unpaid taxes upon the property.

The order of confirmation should be set aside and a new sale ordered on condition that the rents, issues and profits of the real estate should be applied to the satisfaction of the mortgage or taxes on the property. It will be so ordered. No costs or disbursements will be awarded to either party upon this appeal.

CAMPBELL, C. J., and BAILEY, J., not sitting.