PERRY, J.
 

 The plaintiffs brought this suit to reform a contract entered into between the plaintiff Gilbert and defendant, and for damages for breach of the contract as reformed. The defendant denied the allegations of the plaintiffs’ complaint and by cross-complaint demanded judgment for the unpaid balance due from plaintiffs to defendant on the purchase of a sawmill.
 

 The trial court denied reformation, found that the plaintiffs were in default of the contract of purchase of a sawmill and entered judgment against the plaintiffs and in favor of the defendant for the sum of $10,849.35. From this decree plaintiffs appeal.
 

 Insofar as the issues involved herein are concerned, Lloyd A. Gilbert and the Toketee Lumber Corporation are one and the same and for convenience in this opinion the plaintiffs will be referred to as “Gilbert” and the defendant as “Copco.”
 

 Before trial the parties stipulated that all issues presented should be tried as a suit in equity.
 

 The material portions of the contract sought to be reformed are as follows:
 

 “THAT, WHEREAS, Copco is the owner, entitled to and now in the possession of a certain sawmill and planing mill now located at Toketee,
 
 *4
 
 Oregon, and is desirous of selling and Gilbert is desirous of purchasing the same in the manner hereinafter set out, and Copco is likewise desirous of having Gilbert saw and plane certain lumber in said mills, which are the subject matter hereof, and Gilbert is desirous of performing the necessary-work and labor in connection therewith,
 

 “NOW, THEREFORE, for and in consideration of the premises and the covenants and agreements hereinafter expressed, all to be fully kept and faithfully performed upon the part of each of the parties hereto, the parties hereto do hereby covenant and agree as follows:
 

 “1. Copco does hereby agree to sell and does hereby sell, assign, transfer, convey, setover and deliver unto Gilbert its sawmill and planing mill at Toketee, Oregon, together with all and singular the equipment which is devoted to the two operations, exclusive of electrical transformers and service wires, switches, etc. associated and used in connection with the electrical service to the mill and certain tools and welding equipment which have been assigned to the crew for the maintenance of the mill, and specifically including, but not limited to the machinery, equipment, spare saws, planer knives and belting and all and singular the tools, machinery and equipment used in connection therewith, except as specifically excluded herein, an inventory of such said machinery, tools and equipment being hereunto attached, made a part hereof and marked Exhibit “A”, and Gilbert does hereby covenant and agree to buy, purchase and pay for such said personal property hereby sold and which is the subject matter hereof, the purchase price of which said personal property, which is the subject matter hereof and which is hereby sold, is in the sum of Thirty-six Thousand Two Hundred ($36,-200.00) Dollars, which said purchase price shall be paid by Gilbert to Copco by Copco’s retaining and withholding the sum of Four Dollars and Fifty cents ($4.50) per thousand board feet of lumber
 
 *5
 
 or timbers sawed by Gilbert for Copco at the mills which are the subject matter hereof.
 

 “2. Possession of such said personal property, which is the subject matter hereof and of this said sale, shall be given to Gilbert on May 15, 1955, and this said agreement shall be in force and effect from such said date, but title to all of the personal property which is the subject matter hereof and which is hereby sold shall be retained and vested in Copco until the full amount of the purchase price, as provided for herein, shall have been paid by Gilbert. Gilbert reserves the right, likewise, to pay any sums or amounts in addition to the deductions to be made upon the sawing of lumber at any time that he may so desire, during the life and term of said contract.
 

 “3. Gilbert will immediately commence modifications and improvements at the sawmill and planing mill, which is the subject matter hereof, and will spend not less than Five Thousand ($5,000.00) Dollars in such said modifications and improvements, * * *.
 

 # # # *
 

 “5. Copco estimates that some 7,200,000 board feet of lumber and timbers will be required for the construction of the wood flume for Lemolo #2 and that lumber and timbers required for other features of the project- are estimated to approximate an additional 1,500,000 board feet. A portion of the flume timbers have already been produced by Copco and, in addition thereto, some 985,000 board feet of sawed lumber and timbers are stored in the yard adjacent to said mills, along with the flume timbers which have been cut, and that it is estimated that Copco’s requirements for form lumber and miscellaneous timbers for completion of Lemolo
 
 #1
 
 project can be met by the cut now stored in the yard and that Gilbert’s operations during 1955 will be devoted, in a major part, to production of additional lumber and timbers for Lemolo #2 flume.
 
 *6
 
 Any excess lumber and timbers above Copco’s requirement, including any portion of that on hand or which may hereafter be produced, will be sold to Gilbert at Copco’s cost therefor. For lumber which will henceforth be produced and which would be sold to Gilbert by Copco, under the provisions of this said paragraph, such cost would amount to the expenditures made by Copco for stumpage, falling, bucking, decking and transportation of logs to the mill, which cost amounts to $22.35 per thousand board feet at the present time but can be expected to vary as the cost of stumpage, transportation and other features may vary and the cost to Gilbert of excess lumber already produced will be as mutually agreed upon in advance of delivery or change of title and possession in writing between the parties hereto and will be in accordance with its conditions and the cost of production. All lumber or timbers deemed excess will be so designated by Copco and lumber and timbers now cut and stored in the yard will be inventoried and marked in a conspicuous manner in order that its identity will not be lost.
 

 “6. Copco shall pay to Gilbert the sum of $23.50 per thousand board feet of timber or lumber sawn on Copco’s order and, in addition thereto, Copco shall pay to Gilbert the sum of $16.25 per thousand board feet for any lumber or timbers planed on its order.
 
 * * *
 

 *****
 

 “10. Provided Gilbert is not in default under the terms, conditions and provisions hereof, as herein provided for, time being expressly of the essence hereof and thereof, he shall have the right to utilize the ground upon which said sawmill and planing mills are located, a convenient and necessary space contiguous and adjacent thereto for the stacking and storing of any lumber which is sawn and planed under the terms hereof and for the necessary storage of any equipment or additions to said mills that might be necessary, without any
 
 *7
 
 charge or rental therefor. However, it is understood by the parties hereto that Copco operates the sawmill and planers under and by virtue of a Special Use Permit of the United States Forestry Department and that, in the operation of such said sawmill and planing mill by Gilbert, under the terms hereof, he does hereby covenant and agree to conform to all of the Forest Service regulations and all other regulations of any governmental board or authority, either of the United States of America or of the State of Oregon, having jurisdiction over such said matter and that, upon the completion of the cut for the Lemolo #2 project, provided he is not in default hereunder and shall have paid the full amount of the purchase price hereunder, he will immediately proceed to remove such said mills and all of the machinery and equipment used in connection therewith from its location at Toketee.
 

 sfc # & # *
 

 “12. It is further convenanted, agreed and understood hereby that Copco’s construction schedule for Lemolo #2 project will require that all of the lumber and timbers for the flume be produced prior to July 1, 1956, and that the 4,000,000 board feet of 2" x 12" lumber for lining the flume must be air dried, in order to be satisfactory for use in such said project, and that no planing of this said material should be done or had prior to April 1, 1956, unless Copco agrees in writing that the timbers and lumber is sufficiently dry to carry on the project and Gilbert agrees that the completion of the project, as provided for in this said paragraph, is contingent upon Gilbert meeting the schedule, as provided for herein for the production of lumber and timbers. This is so important that it is specifically agreed and understood hereby that irrespective of any of the other terms, conditions and provisions hereof, Copco reserves the right, after giving Gilbert ten (10) days written notice of its intention so to do, addressed to him either at the mill or his address given herein, and to be sent
 
 *8
 
 either by registered mail or delivered personally, to cancel this said agreement and take over the operation of the sawmill and planing mill, which is the subject matter hereof, if such said schedule is not being met by Gilbert or if Gilbert ceases to personally operate the sawmill and planer and in so doing may exercise any of the rights set ont in paragraph 26 hereof; it being further specifically agreed hereby that one of the reasons for this said contract is the confidence that Copco has in Gilbert’s ability and integrity.
 

 ^ ^ ^ ^
 

 “26. Should Gilbert fail, neglect and/or refuse to make said payments, as herein provided for, or should he sell, assign, transfer, setover, mortgage, hypothecate or deliver any of the personal property which is the subject matter hereof, or attempt to do any of said acts, without the written consent so to do of Copco first had and obtained, or suffer or permit said personal property, which is the subject matter hereof, or any part thereof, to be taken and levied upon under attachment, execution or be in any manner marshaled by law or suffer or permit any liens or claims to be filed against the same and not satisfy the same within ten days from such said levy, attachment or filing of such said lien, or shall permit any of said personal property to be taken from Toketee, Oregon, unless for repairs or replacement, without the written consent of Copco so to do first had and obtained, then and in such said event, Copco may immediately retake possession of all of said mills, machinery and equipment, which are the subject matter hereof, and shall and may exercise all and any rights of a vendor or a seller under a conditional sales contract, that is, it may consider this said contract of no further force and effect and the payments made hereunder as liquidated damages, or it may sell the property, or any part thereof, at private or public sale, reserving the right to bid at such said sale itself, and sue Gilbert for any balance which may be owing under
 
 *9
 
 said contract after crediting the amount received at said sale, or may consider this said sale as perfected and sue Gilbert for the balance remaining unpaid, * *
 

 The agreement was entered into on May 11, 1955. No difficulty arose between the parties until in July of 1956 when Copco cancelled its order for the milling and planing of timber and Gilbert was required to remove the mill from its then location.
 

 It appears from the record, and the trial court found, that Gilbert was permitted to and did saw 5,633,483 board feet of lumber and planed 3,392,851 board feet for Copco; that Copco withheld $4.50 per 1000 board feet from the lumber sawed to apply on Gilbert’s purchase of the mill; that after deducting the amount withheld by Copco, there remained due and owing upon the named purchase price the sum of $10,849.35.
 

 As a basis for reformation, Gilbert contended that in the prior negotiations between the parties it was agreed Copco would order sawed at the mill for its use not less than 8,700,000 board feet of lumber and 4,000,000 board feet of planed lumber; that through mutual mistake of the parties the written agreement failed to express this absolute requirement on the part of Copco.
 

 The facts clearly disclose that Copco erected and for a time operated a sawmill for the sole purpose of meeting its lumber requirements in the construction of its two flumes, Lemolo #1 and Lemolo #2; that Copco had procured a stumpage for the lumber it believed it required; that Copco was having difficulty in operating the mill to a capacity that would meet the lumber requirements of its flume project; that Gilbert approached Copco for the purpose of cutting timber
 
 *10
 
 at Ms mill for Copco and was advised that perhaps it could he arranged for him to produce the lumber requirements for Copco if Gilbert would purchase the mill from Copco and improve it through the expenditure of $5,000.
 

 A letter relative to the discussions had at this time was written April 12, 1955, by Copco to Gilbert as follows:
 

 “Pursuant to previous verbal discussions, you called at my office yesterday and proposed as follows with respect to your purchase and operation of the Toketee Saw Mill:
 

 “1. Purchase the mill by allowing $1.50 per thousand board feet reduction in the cost to the Company for sawing its lumber requirements.
 

 “2. You would saw the Company’s lumber requirements, furnishing all necessary labor, maintenance of equipment, trucks and/or loaders as required to stack the lumber in the yard at a cost to the Company of $22.50 per thousand board feet.
 

 “3. You would plane all lumber required by the Company, providing all necessary labor, equipment maintenance and transportation required to move the material to the planer and from the planer to the storage yard at a cost to the Company of $15.25 per thousand board feet.
 

 “4. The cost to the Company for sawing and planing, as outlined in 2. and 3. above, would be increased by $1 per thousand board feet, unless power requirements at the mill were provided at no cost by the Company.
 

 “5. You would propose to invest some $5000 for modifications and installation of new equipment at the mill. This expenditure would, in part, cover the installation of a new planer, new setting and turn-down equipment, and modification of the dry deck and slab conveyor. These modifications and new equipment installation would, in your opinion,
 
 *11
 
 increase the output of the mill to a maximum of 40,000 board feet per shift when engaged in sawing flume timbers. The $5000 proposed investment would not leave you in a position to make a down payment for purchase of the Company’s saw mill and planer.
 

 “In analyzing your proposal, it is immediately apparent that, with an allocation of $1.50 per thousand board feet toward purchase of the mill, the purchase would not be completed at the end of the
 
 contemplated cut
 
 for the Lemolo #2 project. For example, a cut of nine million board feet at $1.50 per thousand would provide only $13,500 toward the purchase of the mill. The depreciated value of the installation is approximately $36,200. (Italics ours)
 

 “Based on our analysis, your proposal would not be sound from our standpoint. When next travelling to Toketee, you may expect that I will stop at your mill on Susan Creek and discuss the matter personally with you.”
 

 A few days later Mr. Humphreys, Copco’s production superintendent, called on Gilbert. Mr. Gilbert testified of this occasion as follows:
 

 “Q What was the subject matter of your conversation at that time?
 

 “A Well, Mr. Humphreys called me and told me he would stop by the mill; that Mr. Boyle wanted to see my mill. I was supposed — we talked in terms of in case something happened to the mill at Toke-tee, I had one at Susan Creek for standby and I would take it right up there and finish out the lumber to be sure that they got their lumber, so they come by and wanted to look the mill over and as they come by, I talked to Mr. Humphreys and I told him — he said $1.50 wasn’t enough and I said I didn’t realize that the mill was as much as it was. I didn’t know it was $36,200.00, and I said ‘How would $4.00 be?’ and he said ‘Well, that’s fair’ and that’s about all that conversation was, so I went
 
 *12
 
 to town and had my attorney write a letter and instead of — I got to figuring; there was $36,200.00 and 9,000,000 feet at $4.00 a thousand would be just $36,000.00, so I had him put another fifty cents on there so I would be sure to get it paid out before the cut was over.”
 

 Concerning this conversation, Gilbert wrote Copco on April 19, 1955, as follows:
 

 “1.
 

 “I hereby offer to saw your lumber requirements in accordance with a proposal which has heretofore been submitted to me, furnishing all necessary labor, maintenance of equipment, trucks and/or loaders and electric power as required to stack the lumber in the yard at a cost to your company of $23.50 per thousand board feet.
 

 “2.
 

 “To purchase your Toketee Sawmill and Planing Mill for the depreciated value of installation at $36,200.00 payable $4.50 per thousand board feet to be withheld by your company from monies becoming due to me under paragraph 1. above.
 

 “3.
 

 “I will plane all lumber required by your company, providing all necessary labor, equipment maintenance and transportation required to move the material to the planer and from the planer to the storage yard at Toketee Sawmill at a cost to your company of $16.25 per thousand board feet.
 

 “4.
 

 “I propose to invest some $5,000.00 for modification and installation of new setworks and turn-down equipment, and the modification of the dry deck and slip conveyor and the reconditioning or replacement of the existing planer. These modifications and installations, in my opinion, would allow a maximum production of 40,000 board feet per
 
 *13
 
 eight hour shift when engaged in sawing flume timbers.
 

 “5.
 

 “The foregoing is conditioned upon my being able to purchase the two fork lifts now being used at the sawmill belonging to Morrison-Knudtsen Company on some terms which are suitable or the fork lifts being made available to me on a rental agreement which is suitable.”
 

 After Copco received the foregoing letter from Gilbert, Copco wrote its attorneys asking that they prepare a contract for the sale of its lumber mill and purchase of lumber requirements from Gilbert, the material portion of the letter being as follows:
 

 “1. Mr. Gilbert would purchase the saw mill and planing mill at our depreciated book value of $36,200.
 
 The Company would be remunerated in this amount by the withholding of $4.50 per thousand board feet of lumber or timbers
 
 sawed by Mr. Gilbert at the mill. The saw mill and planing mill equipment consists of the equipment devoted to the two operations, but does not include the electrical transformers or service wires, switches, etc., associated with electrical service to the mill, nor does it include items of tools and welding equipment assigned to the crew for maintenance of the mill. Spare saws, planer knives and belting are included. (Italics ours)
 

 # # * # #
 

 “5. The Company estimates that some 7,200,000 board feet of lumber and timbers will be required for construction of the wood flume for Lemolo #2. Lumber and timbers required for other features of the project are estimated to approximate an additional 1,500,000 board feet. A portion of the above-mentioned flume timbers have already been produced. There is, in addition, some 985,000 board feet of sawed lumber and timbers stored at the yard along with the flume timbers which have been cut.
 
 *14
 
 It is expected that the Company’s requirements for form lumber and miscellaneous timbers for completion of the Lemolo #1 project can be met by the cut now stored in the yard. Mr. Gilbert’s operation during 1955 will be devoted, in major part, to production of additional lumber and timbers for the Lemolo #2 flume. Excess lumber and timbers above the Company’s requirement, both any portion of that on hand and which will be produced, will be sold to Mr. Gilbert at the Company’s cost therefor. For lumber which will henceforth be produced, this cost would amount to the Company’s expenditure for stumpage, falling and bucking, deciding and transportation of the logs to the mill. At the present time, this cost amounts to $22.35 per thousand board feet, but can be expected to vary as the cost of stumpage, transportation and other features vary. The cost to Mr. Gilbert of excess lumber already produced will be as mutually agreed upon in advance in writing and will be in accordance with its condition and the cost of production. Lumber or timbers deemed excess will be so designated by the Company. Lumber and timbers now cut and stored at the yard will be inventoried and marked in a conspicuous manner in order that its identity will not be lost.”
 

 A glance at the contract will show that it was drafted by Copco’s attorneys in exact accord with Copco’s instructions as set forth in the letter and the prior discussions of the parties.
 

 “Reformation is an extreme remedy and will only be granted on proof that is clear, cogent and convincing.”
 
 Teachers’ Fund Ass’n v. Pirie,
 
 147 Or 629, 636, 34 P2d 660. See also
 
 Kontz v. B.
 
 P.
 
 John Furniture Corp.,
 
 167 Or 187, 115 P2d 319.
 

 It appears quite clear that the parties were at all times discussing the transactions in the light of the estimated lumber requirements of Copco. They were
 
 *15
 
 both anticipating what would be required, but not agreeing that any certain amount would be ordered sawed by Copco. In other words, there was no meeting of the minds as to any certain amount of lumber to be milled. Gilbert’s contentions, therefore, that Copco agreed to purchase 8,700,000 board feet of sawed lumber, or agreed that it would give Gilbert an absolute order to plane 4,000,000 board feet for Copco’s use cannot be sustained.
 

 Nevertheless, the negotiations of the parties, and the contract itself, disclose that the parties agreed that payment for the mill would be made from a fund created with Copco by withholding $4.50 per thousand board feet from the price to be paid by Copco for lumber sawed by Gilbert.
 

 Where the parties contract that payment is to be made in a particular manner and from a particular source, the terms of the agreement are binding upon them.
 
 Keller v. Cohen,
 
 224 Pa 434, 73 A 918;
 
 Harmer v. Tracey,
 
 115 W Va 349, 176 SE 238.
 

 It would, therefore, seem quite clear that Copco, having prevented the creation of a fund from which it was to receive payment, cannot now insist upon its right to payment under the contract.
 

 The trial court found that Gilbert was in default in paying the full monetary consideration for the purchase of the sawmill to the defendant Copco and entered judgment against Gilbert for the sum of $10,849.35.
 

 The failure and refusal of Copco to permit the plaintiffs to saw timber to create a fund out of which the payment for the mill could be made as provided in the contract was a violation of its terms which prevented Gilbert from completing payment.
 

 It is a well-established rule of law that a party
 
 *16
 
 who prevents another from performing a duty under the terms of a contract cannot avail himself of the other’s failure to perform.
 
 Public Market Co. v. Portland,
 
 171 Or 522, 130 P2d 624, 138 P2d 916;
 
 Winklebleck v. City of Portland,
 
 147 Or 226, 31 P2d 637.
 

 Since the parties stipulated, in effect, that although the jurisdiction of a court of equity should fail that court should determine the issues between them, we have done so.
 

 This cause is reversed and remanded with instructions to enter a decree that neither the plaintiffs nor the defendant shall recover from the other, save and except plaintiffs shall be entitled to a judgment for the sum of $1,237.70, which amount defendant admits is due plaintiffs.
 

 Neither party shall recover costs in this court.