Submitted on record and briefs March 16, 1990, reversed and remanded on second count of first counterclaim; otherwise affirmed April 17, Barton's reconsideration and Maxwell's reconsideration denied June 12, both petitions for review denied August 20, 1991 (312 Or 80)

Richard BARTON,
*Respondent,*

*v.*

William Stirling MAXWELL,
*Appellant,*

*v.*

Donald G. CHANDLER,
*Respondent.*

(87CV-201; CA A50318)

809 P2d 1340

William Stirling Maxwell, Brookings, filed the brief *pro se* for appellant.

Mike Stebbins and Stebbins & Coffey, North Bend, filed the brief for respondent Richard Barton.

Nick Nylander and Flaxel, Todd & Nylander, North Bend, filed the brief for respondent Donald G. Chandler.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff, a builder, brought this action for breach of contract to recover the balance due on a contract for construction of a residence for defendant Maxwell (defendant). Defendant counterclaimed for breach of contract against plaintiff and fraud against plaintiff and Chandler, a subcontractor. The court granted directed verdicts for plaintiff and the subcontractor on most of defendant's counterclaims.[1] The jury returned a verdict for plaintiff on his breach of contract claim. That claim is not involved in this appeal. Defendant challenges only the directed verdicts on his counterclaims.

Plaintiff agreed to construct the house on property owned by defendant. The primary materials and essential design of the house came from a kit purchased by defendant from Timberpeg East, Inc. The pertinent provisions of the written contract are:

> "This home to be built on a Time and Material, plus 5% Profit and Overhead. Time is based at $18.50 per man hour, materials and Sub-contractors at Contractors price.

> "Contractor will furnish all material and labor, except material furnished by Timberpeg East Inc. and Owner to complete the Job.

> "* * * * *

> "The estimated cost of this home is projected to be approximately $200,000.00.

> "* * * * *

> "Contractor will keep Owner informed as to cost as the Job progresses."

Defendant testified that his primary concern was that the total cost of the house not exceed $200,000.

As part of the construction, plaintiff was to design and install a heating, ventilating and air conditioning (HVAC) system that would dehumidify the air, which was necessary to protect defendant's rare book collection against

---

[1] One counterclaim for breach of contract was submitted to the jury, which found for plaintiff. Defendant also brought a separate claim against plaintiff only for fraud. The trial court said that it would grant plaintiff's motion for a directed verdict but would nonetheless submit the matter to the jury. ORCP 63B. The jury returned a verdict for plaintiff. The parties do not raise any challenge regarding the claims that were submitted to the jury.

the humidity arising from an indoor lap pool. Plaintiff subcontracted with Chandler to install the system.

After plaintiff began construction, numerous additions and changes were made to the design throughout the initial stages of construction. During that time, plaintiff provided defendant with invoices that set out the costs to date and which defendant paid. Several months into construction, plaintiff provided defendant with a statement in which he listed the remaining work to be done and estimated that the total cost of construction would be $191,032.45. However, the estimate did not include the cost of the kit, which was approximately $69,000. After receiving that statement, defendant excluded plaintiff from the job site and later terminated the contract, citing plaintiff's "large and long-continued misrepresentations as to the cost of my home, your breach of your express promise to keep me informed as to cost as the job progressed, and your other substantial defaults." At the time, the house was only partially completed.

In reviewing the directed verdicts, we review the facts in the light most favorable to defendant and determine whether a reasonable jury could have found in his favor. *See Van Den Bron v. Fred Meyer, Inc.,* 86 Or App 329, 331, 738 P2d 1011 (1987).

■ Defendant first contends that the court erred in respect to his breach of contract counterclaim, which alleged two counts. He first alleged that plaintiff breached the contract by failing

"to keep defendant Maxwell informed as to the cost of the house as the job progressed."

The court granted a directed verdict on that allegation:

"In order to find that as a counterclaim, the finding would have to be that [the contract] was in fact a fixed priced contract. * * * [Defendant] testified when questioned that [plaintiff] had never guaranteed that the house would be done for $200,000 or under.

"* * * To then say that he has been damaged because it exceeded $200,000 would go against the terms of the written contract * * *."

Defendant concedes that plaintiff was not obligated to construct the house for under $200,000. He contends, however,

that that fact does not defeat his claim that plaintiff failed to keep him advised of the costs.

We essentially agree with the court's interpretation and conclusion. It is undisputed that plaintiff regularly provided defendant with bills that contained a breakdown of the costs incurred to date. Defendant did not present any evidence that he either directly or indirectly challenged the adequacy of the billings. Instead, he points to the fact that he will have to pay over $200,000 to complete the house as sufficient evidence of a breach and damages. That evidence would support a claim only if plaintiff was required to construct the house for under $200,000. He was not. There was no evidence supporting the first count of defendant's counterclaim for breach of contract, and the court correctly granted a directed verdict.[2]

■ In the second count, defendant alleged that plaintiff breached the contract by

"(e) Failing to construct the house in a workmanlike manner, specifically:

"* * * * *

"(4) The HVAC System was improperly designed and installed and, as designed and installed, will not adequately heat, cool, ventilate and dehumidify the house."

Plaintiff testified that installation and design of the system was his responsibility. When he stopped working on the house because defendant had excluded him from the project, the system had been designed and installation of most of the interior equipment had been completed. Although the subcontractor continued to work on the system at defendant's request after plaintiff's discharge, it had never become operational. Defendant presented expert testimony that the system design and the duct work were inadequate. In particular, an expert questioned the type of dehumidifier selected and installed and the sufficiency of the duct work that had been installed by plaintiff.

Plaintiff maintains that the system is sufficient to serve the needs of the house. Whether that is true is a question

---

[2] Defendant made a separate counterclaim against plaintiff for breach of contract, because he allegedly did not supply updates on the "projected costs" of the house. He does not challenge the granting of a directed verdict for plaintiff on that claim.

of fact for the jury. He argues in the alternative that, because he was excluded from the job site by defendant and defendant then took control of completion of the HVAC system, he cannot be held responsible for inadequacies in the system. *See Anderson v. Allison,* 256 Or 116, 121, 471 P2d 772 (1970); *Gilbert et al v. Calif.-Ore. Power Co.,* 223 Or 1, 353 P2d 870 (1960). In *Gilbert,* the court said:

> "It is a well-established rule of law that a party who prevents another from performing a duty under the terms of a contract cannot avail himself of the other's failure to perform." 223 Or at 15-16.

That rationale is not readily applicable to a claim that a required act was done but done incorrectly. Plaintiff was not prevented from performing the work that defendant claims was inadequately done. Plaintiff appears to contend that, had he been allowed to remain on the job, complete the HVAC system and test it, he could have cured any deficiencies in his performance. He testified that any identified deficiencies would have been cured by him before he delivered the house to defendant.

The contract was essentially for cost plus five percent for profit and overhead. Payments received by plaintiff included the materials and labor expended for installation of the system. The payments were for having performed, at least in part, the agreement to provide the HVAC system. However, as a matter of law, that cannot protect him from liability for defective work done and paid for.[3]

Plaintiff contends that, even if there is evidence of a breach, defendant failed to present evidence of damages. An expert called by defendant testified that it would cost between $6,000 and $7,500 to install another dehumidifier and complete all necessary corrections. Although the evidence of damages was not very precise, it was sufficient. The court erred by granting a directed verdict on this claim.

Defendant also contends that the court erred in

---

[3] The counterclaim that was submitted to the jury involved a claim of inadequate performance. The court instructed the jury:

> "If a contractor agrees to do certain work and he is prevented from performing the contract by the act or default of the other party, the contractor may not be held liable for his noncompliance with the terms of the contract."

granting a directed verdict on his fraud claim against plaintiff and the subcontractor. He alleged, *inter alia:*

"40

"Plaintiff and one of his subcontractors, defendant Chandler, agreed to represent to defendant Maxwell that the house plaintiff had agreed with defendant Maxwell to construct for defendant Maxwell would include a properly installed system * * * adequate to heat, cool and dehumidify the house * * *.

"41

"Plaintiff and defendant Chandler knew, but defendant Maxwell did not know, that the HVAC System defendant Chandler would in fact install would be inadequate to heat, cool and dehumidify the Main house."

Recovery for fraud on those allegations requires, *inter alia,* proof of a false statement that was made with knowledge of its falsity. *Metal Tech Corp. v. Metal Teckniques Co.,* 74 Or App 297, 307, 703 P2d 237 (1985). Defendant points to the inadequacies of the system as evidence that the parties conspired to make misrepresentations. We agree with the trial court that, although the evidence might show that the job was not properly performed, there is no evidence that the parties knowingly made false statements.[4]

Reversed and remanded on second count of first counterclaim; otherwise affirmed.

---

[4] Defendant's remaining contentions do not warrant discussion.