Josephine CARTER-HOLMES,
Lenton Holmes and Allen D. Wilson,
*Appellants,*

*v.*

Dennis J. SOUSA,
*Respondent.*

(9302-00988; CA A83922)

901 P2d 932

Christopher A. Rycewicz argued the cause for appellants. With him on the briefs was Stewart Sokol & Gray.

Thomas W. Sondag argued the cause for respondent. With him on the brief were John Folawn and Lane Powell Spears Lubersky.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Plaintiffs in a legal malpractice action appeal from a directed verdict for defendant. The trial court concluded that plaintiffs' proof of damage from defendant's alleged negligence was insufficient as a matter of law. We reverse and remand.

■ In 1988, plaintiffs asked an insurance agency to help them obtain insurance coverage for a four-plex apartment building they owned in Northeast Portland. They told the agency's representative that they required insurance for the cost of replacing the building, rather than for its actual cash value. The agency secured coverage with North Pacific Insurance Company. Although the policy's limits were consistent with cost of replacement coverage, unbeknownst to plaintiffs the policy covered the building only to the extent of its actual cash value.[1]

In 1989, the building was severely damaged by fire. When plaintiffs contacted North Pacific about filing a claim, they were told that their fire insurance policy did not provide for cost of replacement coverage. Plaintiffs believed that they were entitled to such coverage, and hired defendant attorney to pursue their purported entitlement to cost of replacement benefits.

Defendant submitted a proof of loss form to North Pacific, claiming $285,000 — the estimated cost of repairing the building — as the loss. North Pacific rejected that claim of loss, and sent plaintiffs a check for $82,890.60, which represented the appraised actual cash value of the building, $70,000, plus the cost of debris removal, $12,890.60. Plaintiffs refused to accept that amount.

Under the terms of plaintiffs' policy, as well as under ORS 742.240,[2] plaintiffs were required to file any lawsuit based on the policy within one year of the date of loss, in this case, by August 6, 1990. Defendant did not inform plaintiffs

---

[1] As amplified below, under "cost of replacement" insurance, the insurer is obligated to reimburse the insured for any amount actually expended for repair or replacement of the insured property.

[2] At the time of the events described, ORS 742.240 imposed a one-year limitation period for fire insurance policy claims. It has since been amended to provide a two-year limitation period. Or Laws 1991, ch 437, § 1.

of that requirement and did not file a lawsuit against North Pacific seeking replacement cost benefits for plaintiffs' loss. Approximately two years after the fire, defendant did file a complaint against the insurance agency that brokered plaintiffs' policy. In the course of mediating that action,[3] plaintiffs discovered that the limitations period for bringing a claim against North Pacific had run. By that time, the building had been condemned by the City of Portland. In May 1992, it was demolished.

Plaintiffs brought a legal malpractice action against defendant based on his failure to file a timely action against North Pacific. They alleged that if defendant had pursued their claim for replacement cost benefits promptly, North Pacific would have become legally obligated to pay such benefits for their fire loss. Plaintiffs sought damages of $176.947.08 which, they alleged, represented the difference between the estimated cost of repairing their building and the building's actual cash value.[4]

At trial, plaintiffs presented, as evidence of damages, estimates that two construction contractors prepared for North Pacific shortly after the fire. Those estimates set the cost of repairing the building at, respectively, $246.947.08 and $250,311.49. At the close of plaintiffs' case, defendant moved for a directed verdict, arguing that plaintiffs' proof of damages was legally insufficient because they had failed to offer evidence that the *cash value* of the building, if reconstructed, would have been any greater than the amount North Pacific had tendered and acknowledged was due. The trial court agreed, and entered judgment for defendant.

On appeal, plaintiffs readily acknowledge that they did not proffer proof of the "rebuilt cash value" of the fourplex. They contend, however, that that is not the proper measure of damages and that the court erred in testing their proof against that standard. In particular, plaintiffs assert: (1) The proper measure of damages is the cost of putting

---

[3] Plaintiffs later settled with the agency.

[4] Plaintiffs' calculation of damages is based on the difference between the lower of two repair estimates prepared at North Pacific's instance ($246,974.08) and North Pacific's estimate of the building's actual cash value ($70,000). Plaintiffs' original $285,000 claim of loss reflects that estimate, plus the cost of reconstructing a damaged skylight that had been omitted from the estimate.

them in the same position that they would have occupied but for defendant's negligence. (2) If defendant had handled their claim properly, including timely filing their action against North Pacific, their insurance contract would have been reformed to provide for cost of replacement coverage, permitting them to reconstruct the damaged building. (3) Because of defendant's negligence, plaintiffs were unable to obtain such a remedy from North Pacific. (4) Therefore, defendant is obligated to compensate plaintiffs for the full value of their lost right and remedy, *i.e.*, the value of the payments North Pacific would have been required to make under cost of replacement coverage (minus insurance benefits they otherwise obtained). (5) Because plaintiffs submitted evidence of the cost of replacement, specifically, North Pacific's own cost of replacement estimates, the trial court erred in ruling that their proof of damages was insufficient.

Defendant raises two related arguments in response. First, defendant contends, plaintiffs' claim must fail because the type of damage they pleaded and attempted to prove — *i.e.*, the cost of replacing their four-plex — is not legally cognizable. Moreover, defendant argues that, even if cost of replacement might otherwise be an appropriate measure of damage, plaintiffs failed to satisfy the conditions for recovering such damages. In particular, defendant reasons as follows: (1) Even if defendant had timely filed an action to reform plaintiffs' insurance policy, and plaintiffs had prevailed in that action, they would not have received a lump sum payment for the total projected cost of rebuilding the four-plex. (2) Instead, they would have obtained a judgment reforming the contract to include an obligation to *reimburse expenses actually incurred* in repairing the building. (3) Because plaintiffs never rebuilt the building and it is now incapable of being rebuilt, they cannot actually incur replacement expenses and, thus, are not entitled to recover damages approximating reimbursement for such expenses.

The parties agree that the measure of damages in a malpractice action arising from the loss of a viable claim is generally the value of the putative "lost judgment." *See* Meiselman, *Attorney Malpractice: Law and Procedure* § 4.2 (1980); 7 Am Jur 2d, "Attorneys at Law," § 226; *Cf. Ridenour v. Lewis,* 121 Or App 416, 419, 854 P2d 1005, *rev den* 317 Or

583 (1993) (plaintiff's evidence of face value of lost judgment deemed *prima facie* evidence of amount of damages). They disagree, however, as to the value of plaintiffs' alleged lost reformation judgment.

Defendant argues:

"The value of a reformation decree to plaintiffs is the value of a rebuilt fourplex, not the cost of rebuilding it. Indeed, had defendant negligently burned down the fourplex, plaintiffs still would have been allowed to recover from him only the building's fair market value, not the cost of repairing it."

That argument, which is derived from cases involving tortious property damage,[5] fails for two reason. First, it ignores the fundamental nature of plaintiffs' claim. This is not an action for property damage. It is, instead, an action for malpractice arising from defendant's failure to pursue a claim pertaining to coverage under an insurance policy.

The value of the coverage allegedly lost as a result of defendant's negligence is the measure of the value of the lost judgment and, hence, of plaintiffs' damages. The value of that coverage is, in turn, the difference between cash value coverage and cost of replacement coverage. Thus, the measure of plaintiffs' malpractice damages is the value of plaintiffs' reasonably projected replacement costs minus the amount of the cash value coverage.

Defendant's position further fails for a second, common sense reason. If defendant were correct, parties in the position of the present plaintiffs would have no recourse against attorneys who negligently failed to pursue claims to reform "cash value" coverage as "replacement cost" coverage. Because such plaintiffs could recover nothing more than cash value, attorneys who negligently failed to pursue such reformation actions would be effectively immunized from liability.[6]

---

[5] *See, e.g., Millers Mut. Fire Co. v. Wildish Const. Co.*, 306 Or 102, 124, 758 P2d 836 (1988) (proper measure of damage when property is damaged by tort is the diminution in market value caused by the tort).

[6] In defendant's view, the nature of plaintiffs' lost coverage is immaterial. It would make no difference whether plaintiffs' insurance agent had failed to obtain cost of replacement coverage or had failed to obtain cash value coverage. In either case, the measure of damages is the same: cash value.

Defendant next argues that, even if replacement cost could otherwise be an appropriate measure of malpractice damages, plaintiffs cannot avail themselves of that measure because they did not expend any money repairing or replacing the four-plex when the building was still standing and cannot repair it now. Defendant invokes, particularly, *Higgins v. Insurance Co. of N. America*, 256 Or 151, 166, 469 P2d 766 (1970), which noted that, under standard replacement cost coverage, an insured's recovery is limited to reimbursement of expenses actually incurred in repairing or replacing the insured building.[7]

Plaintiffs do not dispute the principle expressed in *Higgins*. They argue, however, that: (1) But for defendant's negligence, frustrating successful prosecution of their reformation claim, the four-plex would not have been demolished. (2) If the four-plex had not been demolished, they could have, and would have, repaired the building. And (3) defendant should not be permitted to invoke plaintiffs' inability to repair the building, which resulted from his own negligence, as a basis for reducing plaintiffs' damages from the loss of replacement cost coverage.

We agree with plaintiffs that a reasonable jury could conclude from the evidence that, but for defendant's malpractice, the four-plex would not have been demolished and, particularly, that plaintiffs would have incurred substantial replacement expenses. We also agree that, in these circumstances, defendant cannot invoke the consequences of his malpractice, which prevented plaintiffs from repairing their building, as a basis for reducing his own liability. *Accord Anderson v. Allison*, 256 Or 116, 121, 471 P2d 772 (1970) ("[W]here the conduct of the defendant has prevented the performance of a contract provision by the plaintiff, [defendant] cannot avail himself of any such failure to perform."); *Gilbert v. California Oregon Power Co.*, 223 Or 1, 15-16, 353 P2d 870 (1960) (same). Thus, *Higgins's* "actual repair" principle does not preclude plaintiffs from recovering damages representing the value of replacement cost coverage.

---

[7] Defendant contends that if plaintiffs' insurance policy had been reformed to provide replacement cost coverage, that coverage would inevitably have included that standard limitation. The record supports that contention.

Defendant contends that, in these circumstances, an award of such damages will confer a windfall on plaintiffs, who can never repair the now-demolished four-plex. That may be so. But to limit plaintiffs' recovery to cash value damages, which the insurer has already tendered — that is, to hold that plaintiffs can recover no damages from defendant — would permit defendant to reap a concomitant, but unconscionable, windfall by escaping liability solely because of the temporal consequences of his own malpractice. As between those two results, defendant, not plaintiffs, should bear the risk of loss.

We conclude that plaintiffs' proof of cost of replacement damages was sufficient to be submitted to the jury. A reasonable person, viewing plaintiffs' testimony and the repair estimates prepared for North Pacific in the light most favorable to plaintiffs, could conclude that they suffered damages to the extent of those estimates minus the building's cash value. The trial court erred in granting defendant's motion for a directed verdict.

Reversed and remanded.