IN THE

# Supreme Court of the State of Oregon.

ADDITIONAL TO THOSE IN VOLUME ONE.

December Term, A. D. 1861.

AARON E. WAIT, *Chief Justice.*
REUBEN P. BOISE, ⎱ *Justices.*
RILEY E. STRATTON, ⎰
J. G. WILSON, *Clerk.*

A. FAHIE, Appellant, *v.* E. B. and PENNA PRESSEY, Respondents.

*Appeal from Multnomah County.*

1. Equity affords no relief to a party who has lost his remedy at law through ignorance of a fact, which he might have obtained by proper diligence; unless there has been some mistake, accident or fraud.
2. Under a decree of foreclosure at a sale of a lot supposed to belong to P. but in fact to his wife, who was not served in the suit—*Held,* 1. That the wife by her mere silence was not estopped from afterwards asserting her rights. 2. That, although she received a part of the purchase money of the sale, she must be taken to have acted as agent for, or subject to her husband. 3. That the legal title of mortgaged property being in the wife, she is a necessary party to the foreclosure suit.

THE complainant filed his bill in chancery in the Circuit Court for Multnomah county, and shows the following state of facts:

The respondents, E. B. Pressey and Penna Pressey, his wife, in 1859, executed a mortgage upon lot number four in

block number       , in the city of Portland, Oregon, to one
William O'Neill, to secure the payment of five hundred dol-
lars with interest, for which there was also a note executed
by E. B. Pressey and one Lathrop.   In case of default of pay-
ment the mortgage empowered the mortgagee to sell the
premises in manner as prescribed by law, pay the debt, and
pay the surplus if any to E. B. and P. Pressey.   The bill
states that default was made in payment of the note; that suit
was commenced for foreclosure of mortgage, and that E. B.
and Penna Pressey and Lathrop were made defendants, but
that service was had upon E. B. Pressey only.   At the Novem-
ber term of the court, 1860, a decree of foreclosure was
entered against E. B. Pressey, and an order made for the sale
of the premises; and the cause continued as to the other
defendants.   Under the order of sale, the premises were
regularly sold at public auction to the complainant, for the
sum of one thousand four hundred and seventy-five dollars.
It is alleged that, after the payment of the debt, interest and
costs, there was a balance of some six hundred dollars paid
over to and received by Penna Pressey.   The bill avers that
at the time of the sale all parties looked upon the proceedings
as foreclosing the rights and interests of both E. B. and Penna
Pressey.   That some time after the sale, complainant dis-
covered that the title of the property was in Penna Pressey,
but avers upon information and belief that the lot is in fact
the property of E. B. Pressey, that the same was purchased
and improved with his money, and that the right of Penna
Pressey is merely nominal; that she had full knowledge of all
the proceedings as aforesaid, and that the property was adver-
tised as the property of E. B. Pressey; that she suffered the
same to be sold as such; and that, with a full knowledge that
the property had been so sold, she received a part of the pro-
ceeds of said sale and ratified the same; but afterward she
set up a claim to the property, and refused to recognise the
right of the complainant thereto, thereby rendering the
property of little value in the hands of the complainant.   To

foreclose this alleged nominal interest was the purpose of the bill.    The respondents demurred, the demurrer was sustained, and the complainant appealed.

*Geo. H. Williams, Esq.*, of counsel for appellant.

*Smith & Page*, of counsel for appellees.

STRATTON, J.  ·As the case stands on demurrer to the bill, it must be determined by such interpretations as by law ought to be given to the allegations of complainant; and, upon these allegations, not controverted, is he entitled to relief upon his own showing?   It may be remarked in passing, as a well settled rule of pleading, that every question of accident, surprise, mistake or fraud, must rest, not upon the mere statement of the pleader, *eo nomine*, but upon such a showing of facts and circumstances, if taken as true, as must lead to that legal conclusion.   (*Story, Eq. Pl.*, 251.)

Upon similar principle and for like reasons, the legal relations of persons and property are not to be affected by mere allegations, unsupported by facts, such as would justify a court in pronouncing judgment for the alleger upon such a showing of facts on the record.   ⸰

These rules follow in a great measure from the character of the demurrer, as well as from the necessity and justice of putting the respondents upon notice of the particular case which he has to meet.   Tested by these rules, no question of mistake or fraud could legally arise upon the complaint before us.   We will consider each question more in detail.   While it is the peculiar province of a court of equity to inquire into, and relieve against the consequences of mistake of facts, into which a complainant may have fallen to his damage, it by no means follows that *every* mistake of facts which has worked an injury is relievable against.   A large proportion of the misfortunes of life are not so much attributable to the superior sagacity or over-reaching unscrupulousness of one class, as to

Fahie *v.* Pressey.

the blind folly and negligence of another. Litigation would never end were courts to undertake to restore the equilibrium of right between all such parties. To entitle a party to relief in such cases, the facts must not only be material, but must be such that he could not with reasonable diligence have obtained knowledge of them. Where there is neither accident nor mistake, fraud nor misrepresentation, equity affords no relief to a party on the ground that he has lost his remedy at law through mere ignorance of a fact, the knowledge of which might have been obtained by due diligence and inquiry. (*Willard's Eq. Jur.*, 70.) How then, it may be asked, has the complainant shown himself entitled to relief?

After the sale, so the bill states, he discovered that the title was in the name of Penna Pressey. How or when this discovery was made is not stated, and, in the absence of such information, we must presume that the deed was found on record where the law requires it to be placed; and we must further presume that it was recorded in due time and was notice to the complainant and all the world. The information was as accessible before as after the sale. ("*Vigilantibus, non Dormientibus, jura Subvenicent.*")

It is sought to charge Penna Pressey with fraud, actual or constructive. Two principal facts in the bill are relied on to support the charge—first, that Penna Pressey had knowledge of the proceedings in the premises, the advertisement and sale of the property as the property of her husband, and that by her silence she is estopped from saying to the contrary; and second, that after the sale, the surplus, some six hundred dollars, was paid to and received by her, and that, by so receiving the money, she ratified the proceedings. The first proposition must proceed upon a fact which appears on the face of the bill, that Penna Pressey was never served with process for the purpose of bringing her before the court, but that her knowledge and her silence must operate precisely in the same manner as if her husband and a third party had been dealing with her separate property, instead of a court.

The fallacy of this proposition must be apparent at a glance, but of that we shall presently say'more. If true, however, would she be estopped from asserting her title? It is as true in law as consonant with reason, that he who remains silent when he should have spoken, and permits his property to be dealt with by a stranger as his own, is estopped from asserting that right to the damage of another, when the latter, from his silence, might fairly infer that he had no interest in the thing. It is further true, that, when a party under a misapprehension of his legal rights, by his word or act places another party in an attitude of hostility to those rights, he must submit to the loss. This was the case of *Storrs and Brooks* v. *Baker*, 6 *John. Ch. R.*, 166, cited by the counsel of appellant as in his favor. In the view we have taken of this case, the authority is not in point. We are asked to deal with Penna Pressey as if she were a third person, and not affected by the marital relation. Is there no presumption operating in favor of her silence as to her husband's dealings, when the very relation of wife is said to merge her legal existence in that of the husband, and to excuse her from punishment for the gravest of crimes because of that subjection under which the law places her in the nuptial compact? If that is not to be regarded as any excuse, is that confidence which should subsist between husband and wife, the harmony of the household, which it has always been the policy of the law to maintain and encourage, not to be regarded? Or is this court to say that a wife, instead of remaining silent, should advertise her husband's act at every street corner? If he were dealing with her separate property, and by so doing perpetrating a fraud upon others, we have the highest authority for saying that she was not bound to speak, though she knew the fact. *Crenshaw* v. *Anthony, Martin & Yeager*, 110 ; *Bank of the United States* v. *Lee*, 13 *Peters*, 107. The Tennessee case was much stronger than the present, for there the trust deed in favor of the wife of personal property, on the faith of which Crenshaw was given credit, was

recorded in Virginia, and certainly not as accessible as in the case where the record was in the county; nay, in the same town where the proceedings were had. In the case in 13 *Pet.*, Justice Catron, who delivered the opinion, said that " R. B. Lee did deal with and use the property in controversy, as if it had been his own, while he resided in this city (Washington), and that the community did believe him the true owner, and gave him credit on the faith of the property, is no doubt true; and it is very probable that Mrs. Lee knew the fact, but continued passive and silent on the subject."

In both of these cases the obligation of the wife to disclose her interest in the property being dealt with by the husband as his own, came directly under review, and in both, her *silence* was approved on the express ground of her marital relation; and that she had done no affirmative act to mislead or draw in a creditor to trust her husband. But it is said that Penna Pressey, having notice of all these proceedings, by receiving a part of the proceeds of the sale, ratified it, and it would be a fraud on her part now to gainsay it. It might be answered to this—if it were in connection with other than a legal proceeding—that she must be presumed to have acted as the agent of and subject to the control of her husband. We are of the opinion that she, having no legal notice, had no notice at all, and as to any interest, nominal or real of hers, the proceedings of the court and the sale under the decree was a nullity. There is no attempt to show that, at the time the deed was made to the wife, the husband was in debt, and the deed in fraud of creditors; and, if he were not, he might well procure a conveyance to her for her separate use, and the law will uphold it until fraud is shown. The most important and decisive question remains to be considered. The bill expressly states that, after the sale, the title to the premises sold was found to be in the name of Penna Pressey, who was made a party to the original suit. Was she rightfully joined? If so, then service upon her was a necessity to confer any power on the court

to deal with her interest in the controversy. If she were not a necessary party to the suit, and had no interest to bind, although more a party to the bill, the service might be omitted. But it is stated that the legal title was in the wife, nor does it change the result to say that her interest is merely nominal. She being the legal owner of the estate, which by law she might be, the legal title could be divested out of her only in two ways, by her own act, and by act of law; that is, the proceeding of a court having competent jurisdiction of the subject of the suit. She, being the legal owner of the property, before any proceeding could affect her interests, nominal or real, must have been made a party to the bill, have been duly served with process, and thus given the opportunity, by legal forms, of showing her rights, whatever they were. Not having been served in the foreclosure suit, the proceedings as to her were a nullity.

Judgment is affirmed.