Argued April 5, affirmed May 2, 1978

RICH, *Respondent,*
*v.*
BELLAMY, *Appellant.*
(TC 417-784, SC 25388)
577 P2d 1352

John Toran, Jr., Portland, argued the cause and filed the briefs for appellant.

Bradley Littlefield, of Goldsmith, Siegel, Engle & Littlefield, Portland, argued the cause and filed the brief for respondent.

TONGUE, J.

## TONGUE, J.

This is an appeal from an order setting aside a judicial sale of real property based upon a finding that plaintiff was mistaken in his bid at the execution sale and that defendant would be unjustly enriched if the sale was confirmed.

That order was based upon plaintiff's motion to set aside the sale which alleged that:

> "* * * Plaintiff thought he was purchasing the real property above described when he bid the sum of $17,000.00 for such real property, when in fact he was only purchasing an undivided one-half interest, the remaining undivided one-half interest being owned by the wife of the Defendant, such wife being Frances M. Bellamy."[1]

Defendant then filed a motion to strike plaintiff's motion on the ground that it failed to state facts sufficient to warrant the relief demanded. A hearing was then held, at which evidence was produced which may be summarized as follows.

### The facts.

On January 4, 1975, defendant bought a truck and trailer from plaintiff, giving plaintiff a 90-day promissory note for $5,700 as a down payment, to be secured by a mortgage on the home owned jointly by defendant and his wife. The balance was to be financed through a loan company. For reasons not entirely clear, that financing was not completed, but plaintiff took a judgment against defendant on the note. Execution was then levied upon the property owned by defendant and his wife.[2]

---

[1] Plaintiff's motion was supported by plaintiff's affidavit to the same effect.

[2] Defendant and his wife filed a claim of a right to a homestead exemption in the sum of $12,500. That claim was approved and the court found that the property had a value in excess of that amount and should be sold on execution.

On the day of the judicial sale plaintiff appeared with a friend, Charles Hoover, but without his attorney. Defendant was also present, with his attorney. Plaintiff made a bid of $17,000. Defendant's attorney then bid $17,015, but when he did not produce the necessary funds, plaintiff's bid of $17,000 was accepted. The proceedings were then postponed to enable plaintiff to get a cashier's check, after borrowing that amount from Mr. Hoover. Defendant was then given a receipt for that amount. Plaintiff testified that in making that bid he understood that he was "buying the whole property" and that if he had known that he was only acquiring defendant's interest in the property he would not have bid $17,000 because the property had been appraised for $18,000 and he would not have paid $17,000 for "half of it."

Plaintiff admitted, however, that prior to the sale he had a financial statement from defendant showing that the property was owned by defendant and his wife, as well as a copy of a deed naming defendant and his wife as grantees; that he knew that defendant's wife had refused to sign a mortgage on the property; that he knew that she had an interest in the property.[3] He testified, however, that he nevertheless made a mistake in thinking that in bidding $17,000 he was buying "the whole property" and not "a half" of it.

Plaintiff's friend, Mr. Hoover, also testified that he thought that "the whole property" was being sold, free "from the interest of defendant's wife," and that he would not have loaned $17,000 to plaintiff to make the bid had he known that only defendant's interest would be acquired.

It is of interest to note that defendant also testified that at the time of the execution sale it was also his understanding that plaintiff had "bought the whole property" and that he and his wife "would be moving out." Defendant's attorney, however, testified that in

[3]The deed, from defendant's mother to defendant and his wife, also reserved a life estate in defendant's mother.

bidding $17,015 he knew that only defendant's interest in the property was being sold; that he had "no idea" what that interest in the property was worth, but made that bid "to try to get as much money for the property as I could."

Plaintiff discovered some two weeks after the sale that he was acquiring only the defendant's interest in the property. He then filed the motion to withdraw and set aside his bid. At the hearing on that motion defendant offered to convey the property to plaintiff for $17,000 if plaintiff would satisfy his judgment for $5,700. Plaintiff declined that offer.

At the conclusion of the hearing the trial judge stated that he was "convinced there has been a mutual mistake and the sale should be set aside."

*A judicial sale may be set aside for mistake by the purchaser prior to an order confirming the sale.*

Defendant's primary contentions are (1) that by reason of the provisions of ORS 23.490 plaintiff, as the purchaser, had no right to "object to his own bid" and cannot contend that "his mistake constitutes an 'irregularity' in the proceedings," within the terms of that statute and that "the mere fact a party bid more than the property is worth" is not such an "irregularity" as to support an order denying confirmation of a sale;[4] (2) that the purpose of a judicial sale is to obtain the highest price for the property sold; that the rule of

---

[4]ORS 23.490 provides as follows:

"Whenever real property is sold on execution, the provisions of this section shall apply to the subsequent proceedings, as follows:

"(1) The plaintiff in the writ of execution is entitled, on motion therefor, to have an order confirming the sale at any time after the expiration of 10 days from the date of filing the return of sale, unless the judgment debtor, * * * files with the clerk within 10 days after the return of execution, his objections thereto.

"(2) If such objections are filed, the court * * * shall, notwithstanding, allow the order confirming the sale, unless on the hearing of the motion it satisfactorily appears that there were substantial irregularities in the proceedings concerning the sale, to the probable loss or injury of the party objecting. * * *

"* * * * *."

"caveat emptor" applies to such a sale; that the fact that plaintiff failed to exercise due diligence and hardship alone is not a sufficient basis for equitable jurisdiction; and that, in any event, plaintiff did not plead and prove that he was prejudiced in that there was no competent evidence of the value of an undivided one-half interest in this property; and (3) that plaintiff's mistake, if any, was a unilateral mistake, which is insufficient and that "plaintiff did not plead nor did he prove that his unilateral mistake was known to the defendant."

Several of the cases cited by defendant in support of these contentions, however, involve suits in equity to set aside judicial sales or other proceedings brought *after* the entry of orders confirming such sales.[5] The rule is different when objection to a judicial sale is made *before* the entry of an order confirming the sale.

In *Ensley-Koebel v. Nat. Guar. Prop.,* 279 Or 391, 395, 568 P2d 655 (1977), also involving a claim of mistake by a purchaser at a judicial sale, we held that:

"Until an order has been entered confirming a sheriff's sale under a decree foreclosing a mortgage, such a sale can be set aside by the trial court for mistake relating to the property covered by the mortgage. * * *"

Although defendant's brief cites no Oregon cases holding directly to the contrary, in view of the serious contentions by defendant in a well written brief we have re-examined the rule as stated in *Ensley.* Upon doing so we find that it is supported by previous decisions of this court and is also in accord with other authorities.

In *Miller v. Achurch,* 50 Or 478, 93 P 332 (1908), an appeal from an order confirming a judicial sale after

---

[5] *See Fahie v. Pressey,* 2 Or 23 (1861); *House v. Fowle,* 22 Or 303, 29 P 890 (1892); *Burrows v. Parker,* 31 Or 57, 48 P 1100 (1897); *Nodine v. Richmond,* 48 Or 527, 87 P 775 (1906); and *Churchill v. Meade,* 92 Or 626, 182 P 368 (1919).

overruling objections by the purchaser, as in this case, it was held (at 481):

"* * * Where the procedure to secure the confirmation of a sale on execution has not been regulated by statute, it has been uniformly held that plaintiff, defendant or the purchaser is entitled to prosecute a motion or action to set aside a sale, because each of them may be aggrieved thereby, unless from some cause he has ceased to be prejudiced or affected by it, or by his misconduct he has brought about the wrong of which he complains. Thus a purchaser may move to vacate a sale because the proceedings are not sufficient to give him title, or for any other reason rendering it unconscionable to enforce his bid, and the plaintiff may likewise do the same because some irregularity, misconduct, mistake or misapprehension has resulted in a sale for an inadequate price, leaving his judgment wholly or partially unsatisfied: * * *."

The court then considered the statute (the predecessor of ORS 23.490) and held (at 482) that:

"The purpose of this statute, as we read it, is not to prescribe how and under what circumstances a sale may be confirmed, excluding all others, * * * there is no language therein which by reasonable intendment can be construed to * * * deprive any other interested person than the judgment debtor of the right to object at any time before confirmation. Upon this view of the law plaintiff had the right to present his objections and have the facts determined.

"* * * If the proceedings had been so irregular as not to give him a title, or if by an excusable mistake he had inadvertently bid a sum less than the amount of his execution * * * he then had sufficient reason to cause the sale to be set aside, * * *."

*See also Grisold v. Stoughton,* 2 Or 61, 65 (1863), and *Teachers' Ret. Fund Ass'n v. Pirie,* 150 Or 435, 442, 46 P2d 105 (1935). *Cf. Stafford v. Adams,* 274 Or 683, 548 P2d 496 (1976).

Also, according to Kleber's Void Judicial and Execution Sales 342, § 383 (1899):

"In a legal or judicial sense there is no sale until after confirmation, though in popular phraseology the sale

[ 269 ]

occurs at the time the property is bid in. Before the approval by the court it is a sale only in a popular sense. The court has a very broad discretionary power in confirming or disapproving sales made under its writs or orders. Therefore, the judicial act of confirmation is a matter largely resting in the wise discretion of the court, and in its exercise the chancellor is actuated by prudence and a consideration of fairness toward all of the parties concerned in view of all surrounding facts and circumstances.

"There is no absolute legal rule to guide the court in this regard, and the exercise of judicial power in this regard is that of a sound legal discretion. The permutations and combinations of circumstances that confront the court when called upon to make the decree of confirmation forbid the establishment of an inflexible rule to be invoked in making it."

To the same effect, the rule is stated in 2 Freeman, Executions 1752-53, § 304(e) (3d ed 1900):

"* * * The confirmation may be opposed either by the original parties to the suit, or by the purchaser, who, by his bid, and the report of the commissioner or master, has become a quasi party to the suit. 'Whether a court will confirm a sale made by a commissioner under its decree, must, in a great measure, depend upon the circumstances of each case. It is difficult to lay down any rule applicable to all cases; nor is it possible to specify all grounds which will justify the court in withholding its approval.' 'The court in acting upon a report does not exercise an arbitrary, but a sound, discretion in view of all the circumstances. It is to be exercised in the interests of fairness, prudence, and with a just regard to the rights of all concerned.' There must be some reason for refusing confirmation, for if the proceedings are regular, with no suggestion of unfairness or of unconscionable advantage gained by the purchaser or either of the parties, it is the duty of the court to confirm the sale. Objections to the confirmation of chancery sales may, we think, be regarded as falling under some one of the following classes: * * * 3. Those in which the complaining party has suffered through some surprise, misapprehension, or accident, which, though not due to the misconduct of his adversary, may yet entitle him to relief; and, 4. Those in

which the contract of sale is so inequitable and uncon-
sionable that the court will decline to enforce it. * * *"
(Footnotes omitted)

*See also* 47 Am Jur 2d Judicial Sales 431, 441, 446-47,
463, 575, 577, 581, §§ 167, 179, 186, 204, 352, 354, 360
(1969). Defendant has cited no authority directly to
the contrary.

■ We may be sympathetic with the problems of the
defendant as the result of the previous judgment
against him. We cannot say, however, that the trial
court abused its discretion in allowing plaintiff's
motion to set aside his bid of $17,000. There was
testimony which, if believed by the trial judge, sup-
ported his finding that there had been a mutual
mistake. As previously noted, plaintiff testified that,
despite his knowledge that defendant's wife had an
interest in the property, he nevertheless made a
mistake in thinking that he would acquire "the whole
property" and not "half of it" and that otherwise he
would not have made a bid of $17,000. Indeed, defend-
ant also testified to the same understanding that
plaintiff had "bought the whole property."

■ Defendant contends that any mistake by plaintiff
was a unilateral mistake, which is not sufficient
unless the mistake was known to the defendant or
should have been known by him.[6] In this case, how-
ever, it was not necessary for plaintiff to prove that
defendant knew or should have known of plaintiff's
mistake because, as previously noted, there was evi-
dence to support the finding by the trial court that
both plaintiff and defendant were mistaken, i.e., that
there was a mutual mistake.[7]

---

[6]Defendant cites *Gardner v. Meiling,* 280 Or 665, 674, 572 P2d 1012
(1977), and *Rushlight Co. v. City of Portland,* 189 Or 194, 219 P2d 732
(1950).

[7]Because there was evidence from which the trial court could have
found that this mistake was a mutual mistake, we also reject defendant's
contention to the effect that the trial court could not properly allow
plaintiff's motion to withdraw his bid because the motion did not allege
that defendant knew or should have known of plaintiff's mistake.

■ ■ As for defendant's contention that plaintiff did not plead or prove that he was prejudiced as the result of his mistake and offered no competent evidence of the value of an undivided one-half interest in the property, we believe that it is sufficient to note that plaintiff's affidavit stated that the property for which he bid $17,000 was "worth $18,000" and that there was evidence that the property had been assessed at having a value of $18,000. It follows, in our judgment, that there was sufficient pleading and proof that plaintiff would have been "prejudiced" if required to pay $17,000 for an undivided one-half interest in real property owned jointly by defendant and his wife.[8]

For these reasons we hold that the trial court did not abuse its discretion in allowing plaintiff's motion to set aside his bid of $17,000 for an undivided one-half interest in the real property owned by defendant and his wife.

Affirmed.

---

[8]We also have not overlooked defendant's "offer to do equity." Although that offer was properly a factor to be considered by the trial court in the exercise of its discretion in this case, we cannot say that the trial court abused its discretion in refusing to give that offer more controlling weight.